847 F.2d 90
 99 A.L.R.Fed. 553, 56 USLW 2681, 1988-1
Trade Cases 68,028,
11 Fed.R.Serv.3d 255
 MARY ANN PENSIERO, INC. d/b/a Bargain Beer and Soda
v.
Robert L. LINGLE and Betty M. Lingle t/a Lingle Distributing.
Appeal of LITMAN, LITMAN, HARRIS, BROWN & WATZMAN, P.C.
 No. 87-5588.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 21, 1988.
Decided May 24, 1988.
 
 Paul A. Manion (argued), Manion, McDonough & Lucas, P.C., Pittsburgh, Pa., for appellant.
 Stephen L. Grose (argued), Pepper, Hamilton & Scheetz, Harrisburg, Pa., for appellees.
 Before GIBBONS, Chief Judge, WEIS and GREENBERG, Circuit Judges.
 OPINION OF THE COURT
 WEIS, Circuit Judge.*
 
 
 1
 Counsel for plaintiffs appeal the imposition of sanctions under Federal Rule of Civil Procedure 11 for failure to reasonably investigate the facts and research the law before filing the complaint in this antitrust suit. We conclude that the record reveals adequate compliance with the pre-filing requirements of Rule 11, and we will therefore vacate the award of sanctions. Moreover, to eliminate piecemeal appeals we adopt a supervisory rule that counsel seeking Rule 11 sanctions must file their motions before entry of final judgment in the district court.
 
 
 2
 Plaintiffs own a local retail beer outlet. Defendants operate a distributorship licensed by the state as the exclusive wholesaler of beer manufactured by certain out-of-state breweries. Plaintiffs brought this antitrust action asserting three claims: a conspiracy to restrain trade in violation of section 1 of the Sherman Act; an attempt to monopolize interstate commerce in violation of section 2 of the Sherman Act; and price discrimination in violation of section 1 of the Robinson-Patman Act. In opposing the defendants' motion for summary judgment, plaintiffs pressed only their Sherman Act monopoly claim, voluntarily dismissing the other counts. The district court entered summary judgment against plaintiffs on this claim, and we affirmed on appeal. Mary Ann Pensiero, Inc. v. Lingle, 810 F.2d 1163 (3d Cir.1987). Before we issued the mandate, defendants filed a motion under Rule 11. After the mandate issued, the district court assessed sanctions against the plaintiff law firm.
 
 
 3
 Plaintiffs opened their retail business--Bargain Beer and Soda--in Lewistown, Pennsylvania in November 1985. They intended to sell, in addition to other labels, Genesee and Anheuser-Busch products, the two most popular brands in the Lewistown area. Because of Pennsylvania's byzantine alcoholic beverage laws, plaintiffs were required to purchase these two brands from defendants Lingles, the area's exclusive wholesale distributor for the Anheuser-Busch and Genesee breweries. The Lingles, however, refused to deal with plaintiffs.
 
 
 4
 To assist them in resolving this stand-off, plaintiffs consulted the law firm of Litman, Litman, Harris, Brown and Watzman. Attorney Thomas R. Betz of that firm met with Mr. and Mrs. Pensiero, the principals of the plaintiff corporation, in late 1985. Preliminarily, the Pensieros informed Mr. Betz that the Lingles disapproved of Bargain Beer's sales philosophy, which emphasized large volume and low prices. Plaintiffs recounted Mr. Lingle's refusal to sell Genesee and Anheuser-Busch products to the Pensieros, and repeated his threat to drive Bargain Beer out of business.
 
 
 5
 The Pensieros told Betz that they had contacted the two out-of-state breweries to enlist their assistance in directing defendants to sell to Bargain Beer. Neither manufacturer agreed to intervene. The Pensieros also advised that Lingle Distributing belonged to Pennsylvania Importing Malt Distributors Association, a trade organization which apparently supported the defendants' refusal to deal with Bargain Beer. In its newsletter, the Association allegedly commended the Pennsylvania Liquor Control Board for declining to penalize defendants for their conduct.
 
 
 6
 On the basis of this information, Betz stated in a November 12, 1985 letter to the Lingles that their conduct violated the federal antitrust laws and, if continued, suit would be filed. Copies of the letter were sent to the Genesee and Anheuser-Busch breweries, and to Stroh's Brewery, a third manufacturer represented by the Lingles.
 
 
 7
 The Lingles did not respond to Betz's letter. Instead, they filed suit in December 1985 in state court to enjoin the Pensieros' purchase of the disputed brands from any other wholesaler. A scheduled hearing was postponed; thereafter, Lingle's counsel relayed an offer to sell the disputed brands to the Pensieros. However, the quoted prices were not those offered to other similarly situated distributors, but were the higher retail prices. The Pensieros rejected this offer. No further action has been taken in the state court suit.
 
 
 8
 In December 1985 and January 1986, Betz conferred with both the Chief Counsel to the Pennsylvania Liquor Control Board and the Deputy Attorney General of the Antitrust Section of the Pennsylvania Attorney General's Office. The Chief Counsel concluded that the defendants' refusal to sell to Bargain Beer was a "citable offense" under the Pennsylvania Liquor Code, yet the Board elected not to take formal remedial action.[1] The Deputy Attorney General opined that the defendants' conduct gave rise to a valid antitrust claim, citing legal authority in support of this view.
 
 
 9
 According to his unchallenged affidavit, Betz conducted further review of the applicable facts and additional legal research. Deciding that a federal antitrust action was warranted, Betz filed the complaint in this case on January 30, 1986.
 
 
 10
 Defendants moved for summary judgment in April 1986. In their legal memorandum submitted the following month, defendants asserted that they "should be awarded the attorneys' fees and costs incurred in defending this suit." They also noted their intention, after deposing Mrs. Pensiero, to file a separate motion "pursuant to Rules 11 and 56(g), Fed.R.Civ.P., and 28 U.S.C. Sec. 1927" for costs and fees.
 
 
 11
 Two weeks later, the district court granted the defendants' motion for summary judgment on the section 2 Sherman Act claim, observing that plaintiffs had abandoned their other claims. By Order dated January 22, 1987 this court affirmed the judgment.
 
 
 12
 After receipt of a copy of this court's affirmance Order, but before the mandate had issued, defendants filed a formal motion in the district court to obtain attorney's fees under Rule 11. The district court determined that it had jurisdiction over the post-judgment motion, rejecting the plaintiffs' contention that no case or controversy remained after this court issued its affirmance. Although concluding that Betz had not acted in bad faith in filing the complaint, the court nevertheless ruled he and his firm had not met the objective standard for reasonableness required by Rule 11. Mary Ann Pensiero, Inc. v. Lingle, 115 F.R.D. 233 (M.D.Pa.1987).
 
 
 13
 In analyzing the section 1 Sherman Act claim--which plaintiffs withdrew at the summary judgment stage--the court decided that the facts were "insufficient to establish grounds for a conspiracy," and that the plaintiffs' allegations were conclusory. With respect to the Robinson-Patman price discrimination claim, also voluntarily dismissed, the court noted the absence of a purchase and sale element, which caselaw establishes is necessary to "state a valid claim under this section."
 
 
 14
 As to the section 2 Sherman Act claim, the court initially commented that plaintiffs had not presented "specific facts to buttress [their] contention that particular brands of beer could constitute a product market.... Plaintiff[s] could have requested additional time for discovery but did not do so...." The court rejected the plaintiffs' assertion that the section 2 claim was grounded in a good faith argument for the extension, modification, or reversal of existing law. On this point, the court faulted plaintiffs for not so characterizing the claim. The court commented that "the section 2 claim was presented in a cursory fashion and, under the circumstances of this case, sanctions are justified for its pursuit."
 
 
 15
 In a later memorandum after reconsideration, the court conceded that its holding on the relevant product market "may or may not have been correct." However, deeming the possibly erroneous ruling as harmless in light of the plaintiffs' failure to set forth facts relevant to that issue, the court reaffirmed the imposition of sanctions.
 
 
 16
 Finding that the plaintiffs' counsel had proceeded in good faith, the court concluded that a $5,000 sanction, rather than the larger sum requested by defendants, was appropriate.[2] Furthermore, because "plaintiff had no part in the decision to pursue this case, other than to abide by the advice of counsel," the court imposed sanctions on counsel only. Plaintiffs' counsel appeals, denying a Rule 11 violation, but conceding the district court's jurisdiction.
 
 I.
 A.
 
 17
 We agree with the district court that it had jurisdiction to entertain the Rule 11 motion, but we turn first to the propriety of the imposition of sanctions.
 
 
 18
 Since Federal Rule of Civil Procedure 11 was amended in 1983, litigation under it has increased substantially as have the number of reported decisions defining the Rule's dimensions. We have explained that the intended goal of Rule 11 is accountability. It "imposes on counsel a duty to look before leaping and may be seen as a litigation version of the familiar railroad crossing admonition to 'stop, look, and listen.' " Lieb v. Topstone Indus., Inc., 788 F.2d 151, 157 (3d Cir.1986). The Rule states:
 
 
 19
 "Every pleading, motion, and other paper ... shall be signed.... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."
 
 
 20
 To comply with these requirements, counsel must conduct "a reasonable investigation of the facts and a normally competent level of legal research to support the presentation." Lieb, 788 F.2d at 157.
 
 
 21
 In scrutinizing a filed paper against these requirements, courts must apply an objective standard of reasonableness under the circumstances. Snow Machines, Inc. v. Hedco, Inc., 838 F.2d 718, 727 (3d Cir.1988); Colburn v. Upper Darby Township, 838 F.2d 663, 667 (3d Cir.1988). The wisdom of hindsight should be avoided; the attorney's conduct must be judged by "what was reasonable to believe at the time the pleading, motion, or other paper was submitted." Fed.R.Civ.P. 11 advisory committee note; Eavenson, Auchmuty & Greenwald v. Holtzman, 775 F.2d 535, 540 (3d Cir.1985).
 
 
 22
 At the time the district judge decided the issues in this case, he lacked the benefit of two opinions of this court, issued afterward, which guide us here.
 
 
 23
 In Gaiardo v. Ethyl Corp., 835 F.2d 479, 482 (3d Cir.1987), we emphasized that Rule 11 targets "abuse--the Rule must not be used as an automatic penalty against an attorney or a party advocating the losing side of a dispute." We cautioned that the Rule should not be applied to adventuresome, though responsible, lawyering which advocates creative legal theories. Rule 11 must not "be interpreted to inhibit imaginative legal or factual approaches to applicable law or to unduly harness good faith calls for reconsideration of settled doctrine." Id. at 483.
 
 
 24
 We further stressed that proper Rule 11 analysis should focus on the circumstances that existed at the time counsel filed the challenged paper. Imposing a continuing duty on counsel to amend or correct a filing based on after-acquired knowledge is inconsistent with the Rule. Id. at 484.
 
 
 25
 In Teamsters Local Union No. 430 v. Cement Express, Inc., 841 F.2d 66, 68 (3d Cir.1988), we reiterated that Rule 11 sanctions are appropriate "only if the filing of the complaint constituted abusive litigation or misuse of the court's process." In that case we added that "Rule 11 may not be invoked because an attorney, after time for discovery, is unable to produce adequate evidence to withstand a motion for summary judgment." Id. at 69. We held that the theory of the plaintiff's complaint, "while novel and unsuccessful, was not plainly unreasonable." Id. at 70.
 
 B.
 
 26
 Application of our precedents to the circumstances here requires that we reverse the sanctions order. As the recited facts establish, at the time the Pensieros' counsel filed this complaint his investigation revealed the exclusive dealership of the disputed product brands, the defendants' deliberate refusal to deal with Bargain Beer and Soda, support for the defendants' conduct by a trade association which included the plaintiffs' competitors, the apparent approval by the product manufacturers, and the opinion of a Pennsylvania Deputy Attorney General that the defendants' actions violated federal antitrust principles.
 
 
 27
 In gauging the reasonableness of an attorney's pre-filing inquiry, the Advisory Committee Notes to Rule 11 suggest consideration of four factors: the amount of time available to the signer for conducting the factual and legal investigation; the necessity for reliance on a client for the underlying factual information; the plausibility of the legal position advocated; and whether the case was referred to the signer by another member of the Bar. Fed.R.Civ.P. 11 advisory committee note. One court has proposed a fifth factor: the complexity of the legal and factual issues implicated. Thomas v. Capital Security Servs., Inc., 836 F.2d 866, 875 (5th Cir.1988) (en banc). In light of these factors, we are persuaded that the complaint filed here, while unsuccessful, was not sanctionable.
 
 1. Section 1 Sherman Act Claim
 
 28
 Plaintiffs had alleged that defendants had conspired unlawfully with others to unreasonably restrain trade in the Lewistown market, 15 U.S.C. Sec. 2. The district judge, however, concluded that plaintiffs had failed "to come forward with some evidence of conspiracy," and awarded Rule 11 sanctions.
 
 
 29
 Proving a conspiracy is usually difficult and often impossible without resort to discovery procedures. This is particularly true in antitrust actions, where "the proof is largely in the hands of the alleged conspirators." Poller v. Columbia Broadcasting Sys. Inc., 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962). A requirement that counsel, before filing a complaint, secure the type of proof necessary to withstand a motion for summary judgment would set a pre-filing standard beyond that contemplated by Rule 11. At the time plaintiffs' counsel filed the complaint here, he knew facts that supported a reasonable suspicion of cooperation between defendants and other parties who could have been expected to benefit from the defendants' intransigence. These factual circumstances and the rational inferences that may be drawn from them convince us that the allegations of the first count comported with Rule 11's pre-filing investigation requirement.
 
 
 30
 That plaintiffs abandoned the conspiracy count some months after the complaint was filed does not negate the reasonableness of the inferences existing at the time the complaint was prepared. Indeed, abandoning a claim that appears unlikely to succeed is responsible advocacy to be commended--not abuse of the court's process to be deterred. Courts benefit when counsel reduce the issues in dispute by objectively reappraising the evolving strengths of their positions throughout the course of litigation. Rule 11 was not intended to inhibit such activity by permitting it to be characterized by an adversary as an admission of liability.
 
 2. Section 2 Sherman Act Claim
 
 31
 Plaintiffs had alleged that defendants attempted to monopolize the trade in Anheuser-Busch and Genesee products in the Lewistown area in violation of section 2 of the Sherman Act, 15 U.S.C. Secs. 2, 15. The district court justified the imposition of sanctions for the filing of this claim on two grounds. First, the court ruled that existing law did not support the plaintiffs' proposition that particular product brands could constitute a relevant product market and that plaintiffs failed to properly characterize this claim as an attempt to extend, modify, or reverse current law. Second, the court faulted plaintiffs for failing to present "specific facts" to support their attempted extension of existing law.
 
 
 32
 As the first ground indicates, the district court read Rule 11 to impose an obligation, a "duty of candor," directing counsel to label their arguments as either supported by existing law, or contrary to existing law but supported by a good faith attempt to extend or modify the jurisprudence.
 
 
 33
 However, in Golden Eagle Distributing Corp. v. Burroughs Corp., 801 F.2d 1531 (9th Cir.1986), reh'g denied, 809 F.2d 584 (9th Cir.1987), the court of appeals found no support for requiring such "argument identification" in either the language or history of Rule 11. The court held that the obligation "makes the Rule more complex than it needs to be and creates costly obstacles for lawyers." Id. at 1541. It also observed that the distinction between an argument based on established law and an argument for the extension of existing law is often not distinctly perceived. "Whether the case being litigated is or is not materially the same as earlier precedent is frequently the very issue which prompted the litigation in the first place. Such questions can be close." Id. See also Grosberg, Illusion and Reality in Regulating Lawyer Performance: Rethinking Rule 11, 32 Vill.L.Rev. 575, 599 (1987).
 
 
 34
 We agree with those observations and hold that counsel may not be found to have violated Rule 11 merely for failing to "label" the argument advanced. Counsel should not be sanctioned for choosing the wrong characterization for their theories.
 
 
 35
 If an attorney explains that after adequate preliminary research, in good faith, he determined to seek reversal of a particular precedent, it is difficult to see how the prefiling legal inquiry could be faulted. Nevertheless, while proper argument identification may be a defense to a Rule 11 sanction, errors in argument identification do not constitute a Rule 11 violation.
 
 
 36
 Of course, this is not to suggest that prudent attorneys should avoid alerting the court when the position they advocate clearly departs from settled and controlling legal precedent. Such argument identifications might illuminate the thoroughness of the pre-filing legal investigation. We decide here only that counsel's errors in identifying their approach do not infringe on Rule 11.
 
 
 37
 The district court's second basis for imposing sanctions--a failure to present "specific facts"--did not adequately credit the information plaintiffs' attorney had uncovered. Plaintiffs were not obliged to prove their case in order to escape Rule 11 sanctions. "[M]ere failure to prevail does not trigger a sanction award...." Gaiardo, 835 F.2d at 483. The correct Rule 11 inquiry is "whether, at the time he filed the complaint, counsel ... could reasonably have argued in support" of his legal theory. Cement Express, 841 F.2d at 70 (emphasis added). The record here contains facts which justify the plaintiffs' decision to press this claim. We believe Mrs. Pensiero's affidavit describing the defendants' refusal to deal was adequate for this purpose.
 
 3. Robinson-Patman Act Claim
 
 38
 Plaintiffs had alleged that defendants violated the Robinson-Patman Act, 15 U.S.C. Sec. 13, by offering Anheuser-Busch and Genesee products to Bargain Beer at prices higher than those offered to other similarly situated distributors. Plaintiffs voluntarily dismissed this claim, explaining that the defendants' refusal to sell the disputed products to Bargain Beer made the claim "not ripe for adjudication." The district court believed that before filing the complaint, counsel should have discovered that an actual purchase was required to state a Robinson-Patman Act claim.
 
 
 39
 Although the plaintiffs' lack of an actual purchase makes this count quite weak, we cannot agree that presenting the claim in the circumstances here was unreasonable. That the state court suit prompted the Lingle's offer to sell at a discriminatory price was rather unusual. Creative counsel might well have urged this event as a distinguishing characteristic to excuse the ordinary Robinson-Patman purchase requirement. The fact that plaintiffs' counsel later decided against embarking upon such a novel course does not constitute an admission of the claim's unreasonableness at its inception.
 
 
 40
 Furthermore, we are not prepared to say that a doubtful count, such as this one, when included in the complaint with others of reasonable merit, so burdens the litigation process that it triggers Rule 11 penalties. See Golden Eagle, 801 F.2d at 1541. Although we acknowledge that the practice of "throwing in the kitchen sink" at times may be so abusive as to merit Rule 11 condemnation, that threshold was not crossed in this case.
 
 
 41
 In sum, we conclude that Rule 11 sanctions were not appropriate here.
 
 II.
 
 42
 Although it initially challenged the district court's authority to consider the belated Rule 11 motion, the law firm has altered its position here on appeal. Both parties now agree that the district court properly exercised its jurisdiction in entertaining the motion. We, however, are required to examine this issue independently because jurisdiction may not be conferred by consent of the parties. Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986).
 
 A.
 
 43
 As a general rule, the filing of a notice of appeal divests the district court of jurisdiction over the case pending disposition of the appeal. Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982) (per curiam). But a number of exceptions have emerged. The district court retains jurisdiction, for example, to issue orders staying, modifying or granting injunctions, to direct the filing of supersedeas bonds, and to issue orders affecting the record on appeal, the granting of bail, and matters of a similar nature. Venen v. Sweet, 758 F.2d 117, 120 n. 2 (3d Cir.1985). See Fed.R.App.P. 7, 8, 9, 10, 11.
 
 
 44
 The rule is a judge-made, rather than a statutory, creation that is founded on prudential considerations. It is designed to prevent the confusion and inefficiency that would result if both the district court and the court of appeals were adjudicating the same issues simultaneously. As a prudential doctrine, the rule should not be applied when to do so would defeat its purpose of achieving judicial economy. See Venen, 758 F.2d at 121; 9 J. Moore, B. Ward, & J. Lucas, Moore's Federal Practice p 203.11, at 3-45 n. 1 (1987).
 
 
 45
 In West v. Keve, 721 F.2d 91 (3d Cir.1983), we discussed the analogous problem of whether the entry of a judgment on the merits in the district court becomes final before adjudication of a petition for statutory counsel fees. After noting the sometimes conflicting policies of judicial efficiency and avoidance of piecemeal appeals, we concluded that a petition for counsel fees could be granted after an appeal on the merits had been taken. "Should the district court prefer to consider a fee application during a pending appeal on the predicate case, the district court is not divested of jurisdiction to determine the application." Id. at 95 n. 5. Accord Venen, 758 F.2d at 120 n. 2.
 
 
 46
 An appellate court's decision is not final until its mandate issues. Finberg v. Sullivan, 658 F.2d 93, 99 (3d Cir.1981) (in banc). Thus, until the Clerk of Court issued the certification in lieu of a mandate on February 19, 1987, the appeal in this case was still pending and the litigation had not yet come to an end. Because defendants filed their Rule 11 motion two days before our mandate issued, the district court had jurisdiction under West and Venen to entertain the sanctions request. We do not rest our decision here on that limited ground, however. The district court would have had jurisdiction to consider this Rule 11 motion in any event because it was collateral to the appeal on the merits.
 
 
 47
 In White v. New Hampshire Dep't of Employment Sec., 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982), the Supreme Court allowed an award for attorney's fees under 42 U.S.C. Sec. 1988, requested in a petition filed more than four months after entry of an unappealed final judgment. The Court decided that the application for fees was collateral to the main cause of action, not compensation for the injury giving rise to the litigation. Id. at 451-52, 102 S.Ct. at 1166-67. The Court explained that because the fee petition required an inquiry distinct from the decision on the merits, it was "uniquely separable" from the matters to be proved at trial. Id. at 452, 102 S.Ct. at 1166-67. See Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 170, 59 S.Ct. 777, 781-82, 83 L.Ed. 1184 (1939) (petition for reimbursement of counsel fees represented "an independent proceeding supplemental to the original proceeding").
 
 
 48
 The court of appeals in Hicks v. Southern Maryland Health Sys. Agency, 805 F.2d 1165 (4th Cir.1986), concluded that a district court has jurisdiction, even after an appellate affirmance on the merits, to award attorney's fees under Rule 11 and other statutory fee provisions. There, the court found White controlling on this point, and affirmed the district judge's post-appeal assessment of fees. Id. at 1167. Cf. Overnite Transp. Co. v. Chicago Indus. Tire Co., 697 F.2d 789 (7th Cir.1983) (ruling district court without jurisdiction to hear post-appeal fees motion, but not discussing the Supreme Court's holding in White).
 
 
 49
 We are similarly persuaded that the rationale of White governs post-appeal Rule 11 filings. We agree with the Court of Appeals for the Fourth Circuit that a Rule 11 motion is "uniquely separable" and collateral from the decision on the merits. The district court here had jurisdiction to entertain the motion and impose sanctions.
 
 
 50
 This conclusion does not, however, end our inquiry. We remain concerned with the appropriate time for the filing and disposition of Rule 11 motions.
 
 B.
 
 51
 In West v. Keve, we acknowledged the diminution of judicial efficiency in allowing appeals from fee petitions separate from judgments on the merits. We noted that the hearings on statutory fee requests which must be conducted in the district court are time-consuming. Accordingly, we concluded that any loss in appellate efficiency would be outweighed by the elimination of unnecessary trial court effort in awarding prevailing party fees ultimately mooted by reversal on the merits. West, 721 F.2d at 94-95.
 
 
 52
 However, in White the Court emphasized that piecemeal appeals of merits and fee questions generally were undesirable. White, 455 U.S. at 453 n. 14, 102 S.Ct. at 1167 n. 14. To minimize the problem, the Supreme Court invited district judges to promulgate local rules establishing timeliness standards for the filing of fee petitions. Id. at 454, 102 S.Ct. at 1167-68.
 
 
 53
 Although a Rule 11 motion is sufficiently analogous to a request for statutory fees to resolve the jurisdictional issues discussed above, certain distinguishing features bear on the desirability of a more restrictive approach to timeliness in resolving sanction disputes. A petition for statutory counsel fees routinely requests payment for relevant services performed during the whole course of the litigation. There is, thus, good reason to wait until the lawsuit has been concluded before calculating the proper fee amount. The computation of attorney's fees in this context is frequently a detailed and prolonged undertaking, requiring thorough review by the trial judge and a sometimes lengthy hearing.
 
 
 54
 By contrast, when awarded as Rule 11 sanctions, attorney's fees ordinarily will not include compensation for the entire case, but only for expenses generated by the Rule violation itself. Consequently, deciding on the appropriate sanction usually demands less review by the trial court and often does not require a hearing. In the case at hand, for example, the district judge arrived at a suitable sanction through the exercise of his informed discretion without conducting an extended appraisal of individual items. The need for protracted scrutiny was obviated by the trial judge's familiarity with the case and the circumstances surrounding the challenged filing.
 
 
 55
 In general, the dictates of due process should not necessitate prolonged consideration in the district court to assess Rule 11 sanctions once a violation has been established. Cf. Snow Machines, 838 F.2d at 725. Thus, the balancing analysis we performed in West prompts a different conclusion in the Rule 11 context than the one reached in that section 1988 case. Swift disposition of a Rule 11 motion is essential so that any ensuing challenge to it might be included with the appeal on the merits. This approach serves the interest of judicial economy without risking a significant waste of district court efforts.
 
 
 56
 Rather than misusing scarce resources, timely filing and disposition of Rule 11 motions should conserve judicial energies. In the district court, resolution of the issue before the inevitable delay of the appellate process will be more efficient because of current familiarity with the matter. Similarly, concurrent consideration of challenges to the merits and the imposition of sanctions avoids the invariable demand on two separate appellate panels to acquaint themselves with the underlying facts and the parties' respective legal positions. See Terket v. Lund, 623 F.2d 29, 34 (7th Cir.1980).
 
 
 57
 The drafters of Rule 11 also suggest early action by litigants who believe they have a valid ground for requesting sanctions under the Rule. The Advisory Committee Notes recommend that "[a] party seeking sanctions should give notice to the court and the offending party promptly upon discovering a basis for doing so.... However, it is anticipated that in the case of pleadings the sanctions issue under Rule 11 normally will be determined at the end of the litigation, and in the case of motions at the time when the motion is decided or shortly thereafter."
 
 
 58
 The fragmented appeals arising in the case at hand, as well as those in Cement Express, graphically illustrate the inefficiency resulting from delay in filing a sanction motion until after resolution of the merits appeal. In each of these cases, the Rule 11 issue could and should have been presented to this court as part of the appeal on the merits.
 
 
 59
 Promptness in filing valid motions will serve not only to foster efficiency, but in many instances will deter further violations of Rule 11 which might otherwise occur during the remainder of the litigation. See Schwarzer, Sanctions Under the New Federal Rule 11: A Closer Look, 104 F.R.D. 181, 194-95 (1985). If a party's action is "abusive" as contemplated by Rule 11, the adversary should be able to realize immediately that an offense has occurred. Seldom should it be necessary to wait for the district court or the court of appeals to rule on the merits of an underlying question of law. If there is doubt how the district court will rule on the challenged pleading or motion, the filing of the paper is unlikely to have violated Rule 11. As stated before, mere failure to prevail does not trigger a Rule 11 sanction order. We do not retreat from our admonition in Cement Express, 841 F.2d at 68; Gaiardo, 835 F.2d at 483; and Morristown Daily Record, Inc. v. Graphic Communications Union, Local 8N, 832 F.2d 31, 32 n. 1 (3d Cir.1987), against routine and indiscriminate invocation of Rule 11: sanctions under this Rule are reserved for only exceptional circumstances.
 
 
 60
 We will henceforth require prompt action by a litigant whenever a Rule violation appears. In that way, the district court will be able to decide the matter in a timely fashion so as to eliminate additional appeals.
 
 
 61
 To carry out the objectives of expeditious disposition, we adopt as a supervisory rule for the courts in the Third Circuit a requirement that all motions requesting Rule 11 sanctions be filed in the district court before the entry of a final judgment. Where appropriate, such motions should be filed at an earlier time--as soon as practicable after discovery of the Rule 11 violation.
 
 III.
 
 62
 Having concluded that sanctions should not have been imposed in this case, we will reverse the order of the district court and vacate the award of attorney's fees.
 
 
 
 *
 At the time of oral argument on this case the Honorable Joseph F. Weis, Jr. was an active circuit judge. Since that time Judge Weis has assumed senior status
 
 
 [1]
 In a written opinion dated January 31, 1986, the Chief Counsel remarked that the defendants' actions "violate[d] antitrust principles." Because that opinion was drafted after the complaint was filed, the views expressed could not have contributed to the pre-filing investigation or research required of plaintiffs' counsel. However, the opinion demonstrates that at least one state official believed that the circumstances evidenced antitrust activity
 
 
 [2]
 Defendants submitted an itemized request for $32,222.41 in attorney's fees, which the court reduced to $5,000. Were sanctions properly assessed in this case, we would agree that the determination as to the amount made by the district court here was well within its discretion