Donald JACOY, Plaintiff,

v.

Abraham TAWIL, Defendant.

Civ. No. 88–2445 (CSF).

United States District Court,
D. New Jersey.

Feb. 16, 1989.

Bloom & Stern by Gary E. Stern, Hackensack, N.J., for plaintiff.

Ronald D. Barrett, Oakhurst, N.J., for defendant.

## AMENDED OPINION

CLARKSON S. FISHER, District Judge.

On September 7, 1988, this court heard argument on the parties' cross-motions for summary judgment in the above-entitled action. Plaintiff, Donald Jacoy, sought to hold the defendant, Abraham Tawil, personally liable for unpaid wages, commissions and employment-related expenses arising out of his employment by defendant's company, Dumont Enterprises, Inc. ("Dumont"), from June, 1979, until October, 1984. In opposition, defendant argued (1) that plaintiff never worked for Dumont; (2) that, in any event, defendant was merely an officer of Dumont; and (3) that Du-

mont had not been in existence since 1982 or 1983, and requested summary judgment in his favor, dismissing plaintiff's complaint.

On September 16, 1988, this court issued an opinion and order granting summary judgment in favor of plaintiff. The decision of the court was based, in part, on a prior judgment entered by the United States District Court for the District of Washington, which held Dumont liable to plaintiff for $47,400.00 in unpaid wages, $26,816.19 for reimbursement of expenses, and for attorney's fees and costs in the amount of $6,993.42. This court held that the doctrine of collateral estoppel precluded further litigation on the issues of plaintiff's employment by Dumont and the debt owed to plaintiff as a result of that employment. The court further held that defendant, as one of the ten largest beneficial shareholders of Dumont, a New York corporation, was personally liable to plaintiff for the outstanding judgment against Dumont, pursuant to § 630 of the New York Business Corporation Law ("BCL").[1]

Shortly thereafter, defendant filed a motion for reconsideration of the court's September 16, 1988, opinion. Plaintiff opposed this motion and filed a cross-motion seeking Rule 11 sanctions against defendant and his attorney, Ronald D. Barrett, for attorney's fees and expenses incurred in litigating the original motion for summary judgment and the costs of preparing the opposition to defendant's motion for reconsideration. Counsel for plaintiff alleges that shortly after oral argument defendant's counsel informed him that the court's decision in this matter would have questionable effect because the defendant had previously filed a petition in bankruptcy. Counsel for plaintiff further alleges that defendant and his attorney wrongfully withheld the fact of the pendency of the

---

1. Section 630 of the BCL provides, in relevant part:

    The ten largest shareholders, as determined by the fair value of their beneficial interest as of the beginning of the period during which the unpaid services referred to in this section are performed, of every corporation ... no shares of which are listed on a national secu-

rities exchange or regularly quoted in an over-the-counter market by one or more members of a national or an affiliated securities association, shall jointly and severally be personally liable for all debts, wages or salaries due and owing to any of its laborers, servants or employees other than contractors, for services performed by them for such corporation.

bankruptcy proceedings from plaintiff and this court, causing plaintiff to incur unnecessary legal expenses to prepare and argue the summary judgment motion and, afterward, to prepare an opposition to defendant's motion for reargument.

On November 9, 1988, the court received correspondence from Bruce H. Levitt, Esq., the duly appointed Trustee in bankruptcy for the defendant. The Trustee informed the court that he first became aware of the instant lawsuit when he received a phone call from plaintiff's counsel, who advised him of the court's decision and said that he had only learned of the bankruptcy proceeding on the day of oral argument. The Trustee verified that defendant had, in fact, filed a petition in bankruptcy under Chapter 7 of the United States Bankruptcy Code on November 16, 1987. The Trustee reminded the court that the filing of the petition invoked the automatic stay provisions of § 362 of the Bankruptcy Code and requested that all further proceedings in this matter be stayed.

Pursuant to § 362(a) of the Bankruptcy Code, the filing of a bankruptcy petition under Chapters 7, 11, 12 or 13 operates to stay any proceeding that could have been commenced or claims that arose before the filing of the bankruptcy petition. *Matter of M. Frenville Co.*, 744 F.2d 332, 335 (3d Cir.1984), *cert. denied*, 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985). In pertinent part, the automatic stay provision provides:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—
>
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the

commencement of the case under this title.

11 U.S.C. § 362(a)(1). When the defendant filed a voluntary petition in bankruptcy on November 16, 1987, he came under the jurisdiction of the bankruptcy court. Consequently, it was improper to allow this court to entertain a pre-petition claim brought against the defendant without apprising the court of the ongoing bankruptcy proceedings. Any further proceedings in this court which relate to the pre-petition claim for wages are automatically stayed.

Plaintiff, however, has moved for sanctions against defendant's counsel requesting his attorney's fees and costs incurred by him in bringing the original motion for summary judgment, as well as those expenses incurred in responding to defendant's motion for reconsideration. Counsel for plaintiff asserts that he was first informed about the bankruptcy proceedings by defendant's counsel on September 7, 1988, at the close of oral argument on the original cross-motions for summary judgment. After some investigation, plaintiff's counsel obtained a copy of the bankruptcy petition [2] and notified the Trustee of the proceedings before this court. Shortly thereafter, the Trustee contacted this court and requested a stay.

Counsel for plaintiff contends that defendant's counsel "must have" been aware of his client's bankrupt status, but, nonetheless, wrongfully withheld this information from the court, allowing the court and his client to expend unnecessary time and money litigating claims which fell under the jurisdiction of the bankruptcy court. To make matters worse, counsel for defendant insisted on proceeding further in this court and brought a motion for reconsideration, despite numerous discussions with plaintiff's counsel regarding the automatic stay provision. Such conduct, plaintiff asserts, is sanctionable.

In response, counsel for defendant asserts that his client did not inform him of the bankruptcy petition until the court ren-

---

**2.** Although plaintiff was listed as a creditor on defendant's bankruptcy petition, no address was given, and thus, plaintiff never received notice of the bankruptcy proceeding from the bankruptcy court.

dered its decision with regard to the cross-motions for summary judgment, almost two weeks after oral argument was heard. Although the defendant had informed him of his desire to file for bankruptcy approximately nine months ago, counsel asserts that he was not aware that a petition had actually been filed. Furthermore, counsel states that he began representation of the defendant in this matter only two weeks prior to the motion date, and consequently lacked adequate time to research this issue. As to the propriety of bringing the motion for reconsideration, defendant's counsel claims that his client informed him that he had withdrawn the bankruptcy petition. Finally, counsel for defendant contends that plaintiff's counsel was informed of the defendant's bankrupt status in April, 1988, prior to the filing of the complaint in this action, by another attorney, who was representing the defendant in a different matter. *See* Aff. of Abraham Tawil, ¶ 2; Aff. of Peter Bass, ¶ 3. Counsel for plaintiff adamantly contests as untrue, however, the assertion that he had been informed of defendant's bankruptcy prior to September 7, 1988, the date of the hearing on the cross-motions for summary judgment. *See* Reply Certif. of Gary E. Stern, ¶¶ 4–6.

As amended, Rule 11 states, in part:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the individual attorney's name.... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause

unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the party who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

The intended goal of Rule 11 is accountability. *Mary Ann Pensiero, Inc. v. Lingle,* 847 F.2d 90, 94 (3d Cir.1988). Specifically, it aims to discourage the submission of pleadings or papers that are " 'frivolous, legally unreasonable or without factual foundation, even though the paper was not filed in subjective bad faith.' " *Lieb v. Topstone Indus., Inc.,* 788 F.2d 151, 157 (3d Cir.1986). The present Rule exists as a warning to both counsel and clients alike that, prior to filing papers either to initiate an action or to conduct the litigation, they must "Stop, Look and Listen" or, as this circuit has phrased it, "Stop, Think, Investigate and Research." [3] *Gaiardo v. Ethyl Corp.,* 835 F.2d 479, 482 (3d Cir.1987).

Rule 11 sanctions are triggered only in those situations which involve the signing of a paper in violation of the Rule. *Teamsters Local Union No. 430 v. Cement Express, Inc.,* 841 F.2d 66, 68 (3d Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 128, 102 L.Ed.2d 101 (1988); *Gaiardo,* 835 F.2d at 484. The current standard for determining whether a pleading or paper has been signed in contravention of Rule 11 is "reasonableness under the circumstances." *Gaiardo,* 835 F.2d at 482; *Eavenson, Auchmuty & Greenwald v. Holtzman,* 775 F.2d 535, 540 (3d Cir.1985). Despite the more stringent standard, however, a district court " 'is expected to avoid using the

---

**3.** Prior to the 1983 revision of Rule 11, the rule was not effective in deterring abuses of the judicial system because a showing of willfulness or bad faith was required. The amendments to the Rule, however, deleted willfulness as a prerequisite to disciplinary action, thus making negligence and, sometimes, professional incom-

petence sanctionable under the appropriate circumstances. *See Gaiardo, supra;* Advisory Committee Notes to Rule 11. It has been said that now "there is no room for a pure heart, empty head defense under Rule 11." Schwarzer, *Sanctions under the New Federal Rule 11—A Closer Look,* 104 F.R.D. 181, 187 (1985).

wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion or other paper was submitted.'" *Eavenson,* 775 F.2d at 540, *quoting* Notes of Advisory Committee on Rules.

■ Moreover, the Third Circuit has repeatedly advised that Rule 11 sanctions are to be imposed only under exceptional circumstances. *Doering v. Union County Bd. of Chosen Freeholders,* 857 F.2d 191, 194 (3d Cir.1988); *Gaiardo,* 835 F.2d at 483. Thus, the imposition of Rule 11 sanctions is appropriate only when the filing of papers with the court constitutes "abusive litigation or misuse of the court's process." *Teamsters Local Union No. 430 v. Cement Express, Inc.,* 841 F.2d at 68. The Rule does not envision a wholesale shifting of attorney's fees and costs from the victor to the losing party in a dispute, absent some evidence of abusive litigation. *Mary Ann Pensiero, Inc. v. Lingle,* 847 F.2d at 94.

■ As noted earlier, a proper Rule 11 analysis requires the court to focus on the circumstances which existed at the time the challenged paper was filed. *Mary Ann Pensiero, Inc.,* 847 F.2d at 95; *Gaiardo,* 835 F.2d at 484. In the instant suit, plaintiff asserts that at the time counsel for defendant signed and filed the original cross-motion for summary judgment, he "must have known" that his client was under the jurisdiction of the bankruptcy court. Counsel, however, attests that his client did not inform him of his bankrupt status until after the motions had been filed and argued.

Although the conduct of defendant's counsel before this court can only be characterized as less than exemplary, there is nothing in the record which conclusively establishes that, at the time he filed the cross-motion for summary judgment, he was aware of the ongoing bankruptcy proceeding. Defendant is represented by another attorney in the bankruptcy matter. Moreover, when the complaint was filed in the case at bar, defendant answered on a *pro se* basis. Counsel only began representing defendant in this litigation shortly

after plaintiff's motion for summary judgment was filed. In fact, the only evidence before this court which would indicate that counsel "might have known" that his client was in bankruptcy at the time he signed the cross-motion was a statement made to him by defendant, some nine months earlier, that defendant was "thinking" of filing for bankruptcy.

Nevertheless, the court must determine whether counsel's prefiling inquiry was reasonable under the circumstances. In reaching this determination, the Advisory Committee Notes to Rule 11 suggest consideration of the following factors: the amount of time available to the signer for conducting the factual and legal investigation; the necessity for reliance on a client for the underlying factual information; the plausibility of the legal position advocated; and whether the case was referred to the signer by another member of the bar. *Mary Ann Pensiero, Inc. v. Lingle,* 847 F.2d at 95; Advisory Committee Note to Fed.R.Civ.P. 11.

Counsel for defendant has attested, and there is no evidence to the contrary, that he became involved in this litigation only two weeks prior to the return date of plaintiff's motion for summary judgment. Because of his hastened entry into this dispute and the short time in which he had to become acquainted with the underlying facts, counsel, at the time he prepared the opposition to plaintiff's motion and the concurrent cross-motion, was dependent upon the representations of his client. In light of these factors, and the absence of evidence showing counsel was aware of the pendency of the bankruptcy proceeding at the time he filed the cross-motion on behalf of his client, the court can only conclude that counsel's conduct with regard to the summary judgment cross-motions is not sanctionable.

■ It is well settled that Rule 11 does not authorize a sanction for failing to amend or correct a document if information obtained after filing reveals an error; however, this immunity is lost if pertinent knowledge is acquired under the Rule's standard prior to a later filing, and subse-

quent papers are judged by the information available to the attorney at the time of the later filing. *Gaiardo v. Ethyl Corp.*, 835 F.2d at 484. Thus, whether the filing of a motion for reconsideration by defendant's counsel is sanctionable will depend on the information available to him at the time that motion was filed.

There is no doubt that at the time oral argument was heard on the cross-motions for summary judgment or shortly thereafter, counsel for defendant was made aware of his client's bankruptcy. The court notes at the outset that the word "bankruptcy" should act as a red-light warning to all parties involved in litigation outside the bankruptcy court to halt immediately all subsequent activity related to that litigation. Counsel's duty to inform this court of his client's bankruptcy arose simultaneously with his acquisition of that knowledge; however, instead of coming forth, in candor, with this information, counsel persistently continued to litigate this dispute before this court by bringing a motion for reconsideration.

By not bringing the defendant's bankruptcy to the court's attention and by filing a motion for reconsideration in spite of the ongoing bankruptcy proceeding, counsel for defendant violated Rule 11. Counsel is an attorney admitted to practice before this court. As such, he is charged with knowledge of the automatic stay provision of the Bankruptcy Code and its effect on litigation proceeding outside the bankruptcy court. In addition, counsel for plaintiff discussed this issue with him and requested that he withdraw the reargument motion so that plaintiff could avoid incurring additional unnecessary litigation expenses in response. Counsel's conduct in bringing the motion, standing alone, was inexcusable negligence; his refusal to withdraw it can only be seen as willful.[4]

While the revised rule directs that the "court ... shall impose ... an appropriate sanction," the district court still retains substantial discretion to tailor the nature and extent of the sanction to the facts of a particular case. *Lieb v. Topstone Indus., Inc.*, 788 F.2d at 157; Advisory Committee Notes to Fed.R.Civ.P. 11. Rule 11, however, expressly authorizes the court to assess an amount which covers the reasonable attorney's fees and expenses incurred as a result of the violation. Fed.R.Civ.P. 11; *Gaiardo*, 835 F.2d at 482. In determining the form and amount of sanctions, rather than the imposition of sanctions, a subjective test is used, and an attorney's conduct, be it willful or merely negligent, is relevant. *Gaiardo*, 835 F.2d at 482; *Lieb v. Topstone Indus., Inc.*, 788 F.2d at 157–58.

In the instant case, counsel's willful conduct in bringing the motion for reconsideration and his refusal to withdraw the motion, in the face of an automatic stay, warrants the imposition of sanctions in the amount of plaintiff's expenses, including attorney's fees, incurred in responding to that motion. Because no evidence was presented as to counsel's awareness of his client's bankruptcy at the time of the earlier motion, these fees cannot be included in the court's assessment. Therefore, counsel for plaintiff is directed to submit an affidavit of costs solely with regard to those costs expended in responding to defendant's motion for reconsideration.

For the reasons set forth above, plaintiff's motion for sanctions. is granted in part.

---

4. The court is unpersuaded by the excuses offered by counsel in defense of his bringing this motion. First, counsel asserts that his client informed him that he was withdrawing the bankruptcy petition; however, his reliance on his client for this information was unreasonable in light of his client's lack of candor prior to this time. Moreover, both the Trustee and plaintiff's counsel warned him that the automatic stay provision of the Bankruptcy Code prevented him from conducting any further proceedings before this court. Second, his interpretation of the Trustee's admonition to mean that he couldn't withdraw the motion for reconsideration is, at the least, unreasonable and, at the most, not to be believed.