**Barbara OXFURTH and Robert Oxfurth, Plaintiffs,**

**v.**

**SIEMENS A.G., Microwave Semi–Conductor Corporation and Saul Lederhandler, Defendants.**

**Civ. A. No. 89–4553(AET).**

United States District Court, D. New Jersey.

Sept. 6, 1991.

Jack N. Frost, Plainfield, N.J., for plaintiffs.

Robert H. Bernstein, Grotta, Glassman & Hoffman, Roseland, N.J., for defendants.

### MEMORANDUM AND ORDER

WOLFSON, United States Magistrate Judge.

On March 8, 1991, this Court issued a Memorandum and Order directing Jack Frost, Esq., (hereinafter "Frost") attorney for plaintiffs, to appear on March 18, 1991 to show cause why sanctions should not be imposed against him pursuant to *Fed. R.Civ.P.* 11. Frost failed to appear on March 18, 1991. Frost finally appeared on March 22, 1991 and this Court held a hearing on Frost's failure to appear on March

18 and the original Rule 11 motion. Presently before the Court is the Rule 11 motion against Frost and defense counsel's motion for fees and costs in having to appear on March 18, 1991.

### BACKGROUND

On December 6, 1990, plaintiffs filed a notice of motion for an order permitting the plaintiffs to amend the complaint to add a count against defendant, Saul Lederhandler, for perjury and/or false swearing and to compel responses to an array of additional discovery requests. After a number of adjournments, plaintiffs' motion was placed on the February 4, 1991 motion calendar. Along with the notice of motion, plaintiffs submitted a statement that no brief was necessary and instead filed only a supporting affidavit. On January 22, 1991, defendants filed a brief in opposition to plaintiffs' motions. Seven days after the motion date, on February 11, 1991, Frost submitted a brief in support of his motions.

In addition to the relief previously requested in his motion, Frost also sought attorney's fees for having to respond to defendants' brief in opposition. On March 8, 1991, this Court denied plaintiffs' motion to amend, stating that under New Jersey law there is no private cause of action for perjury and/or false swearing. Plaintiffs' motion for attorney's fees and costs was also denied and instead defendants' motion for Rule 11 sanctions was scheduled to be heard on March 18, 1991. Frost was ordered to appear at that date and time.

What transpired on the days preceding the Monday hearing date can only be characterized as Mr. Frost's cavalier response to a judicial order. On March 13th, this Court received phone calls from Frost's law firm stating that Frost would not be able to appear for the Rule 11 hearing. Frost never personally called these chambers to enunciate why he would be unable to attend.[1] In addition, Frost's office failed to give any reasons why Frost would be un-

---

**1.** At oral argument, Frost insisted that *he* telephoned chambers on March 13th and explained why he would not be able to appear. *See* transcript, March 22, 1991, at p. 5. No one in my chambers received a call from Mr. Frost.

able to attend except that he would be taking depositions in Florida at the time oral argument was to be heard. There was no indication whether these were court ordered depositions, or when the depositions had been scheduled, or why they should take precedence over a previously ordered court hearing date. Therefore, the request for an adjournment was denied. Next, Frost's partner, Mr. Girdler, called chambers on March 14, 1991 and offered to appear on Frost's behalf. Because the hearing was a Rule 11 motion against Frost, personally, Mr. Girdler's appearance would be of no assistance. After finding out that this Court was not going to change the March 18, 1991 hearing date, Frost contacted Judge Thompson to see if she would relieve him of his responsibility of showing up on March 18th. Judge Thompson stated that she had nothing to do with scheduling the Rule 11 hearing and consequently would not take a position on Frost's request.[2] This Court and defense counsel were then never given a direct confirmation on whether Frost was going to appear on March 18, 1991. While it was confirmed that Frost did travel to Florida, during the week of March 13th, as of 10:00 A.M. Monday, March 18, 1991, this Court still assumed Frost would appear.

On March 18, 1991, defense counsel Robert Bernstein appeared for the hearing, however, Frost did not attend. The hearing was rescheduled to March 22, 1991 at which time the Court addressed Frost's failure to appear, Bernstein's motion for fees and costs in having to appear on March 18th, and the Rule 11 motion.

### RULE 11

Rule 11 provides in relevant part that: [t]he signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

*Fed.R.Civ.P.* 11.

■ Rule 11 sanctions may be imposed only when it can be shown that an attorney has signed and filed papers without conducting "a reasonable investigation of the facts and a normally competent level of legal research to support the presentation." *Mary Ann Pensiero, Inc. v. Lingle,* 847 F.2d 90, 94 (3rd Cir.1988), *quoting, Lieb v. Topstone Industries, Inc.,* 788 F.2d 151, 157 (3rd Cir.1986).

■ The purpose of Rule 11 is deterrence. *Doering v. Union County Bd. of Chosen Freeholders,* 857 F.2d 191, 194 (3rd Cir.1988). Rule 11 is targeted at sanctioning abuse, and "should not be applied to adventuresome, though responsible lawyering which advocates creative legal theories." *Pensiero,* 847 F.2d at 94. Rule 11 is not to "be interpreted to inhibit imaginative legal or factual approaches to applicable law or to unduly harness good faith calls for reconsideration of settled doctrine." *Gaiardo v. Ethyl Corp.,* 835 F.2d 479, 484 (3rd Cir.1987).

■ Additionally, Rule 11 should not serve as a general fee shifting statute. *Doering,* 857 F.2d at 194. The intended goal and purpose of Rule 11 is accountability. *Pensiero,* 847 F.2d at 94. "The rule imposes on counsel a duty to look before

---

**2.** Interestingly, Frost was able to personally contact Judge Thompson's chambers, but, he was unable to extend to this Court the common courtesy of a phone call to discuss the problems he was having in attending the scheduled hearing date.

leaping and may be seen as a litigation version of the familiar railroad crossing admonition to 'stop, look, and listen.' " *Lieb*, 788 F.2d at 157. Rule 11 does not permit the use of the "pure heart and empty head" defense, *Gaiardo*, 835 F.2d at 482, *quoting, Schwarzer, Sanctions Under Rule 11—A Closer Look*, 104 F.R.D. 181, 187 (1985).

 In determining compliance with the rule, the court must apply an objective standard of reasonableness under the circumstances. *Lieb*, 788 F.2d at 157. Courts should apply Rule 11 sanctions only in "exceptional circumstances," *Gaiardo*, 835 F.2d at 483 and are " 'appropriate when it is the *minimum* that will serve to *adequately* deter the undesirable behavior.' " *Doering*, 857 F.2d at 194 (citations omitted) (emphasis in original).

 Frost's conduct during the pendency of this motion as well as his prior dilatory conduct in this litigation [3], fall well within the range of sanctionable conduct under Rule 11. First, Frost moved to amend the complaint to add a count against defendant Lederhandler for perjury and/or false swearing. In support of this motion, signed by Frost, dated November 21, 1990 and filed December 6, 1990, Frost filed an affidavit barren of law and facts to support his precedent making motion. In sum, Frost filed a motion asking this Court to overrule existing New Jersey law [4] yet failed to cite even one case in support thereof. Before filing opposition papers, defense counsel wrote Frost a letter stating that there is no civil cause of action for perjury and/or false swearing under New Jersey law and gave Frost the opportunity to withdraw the application. Frost did not respond. As a result, defendants filed their brief in opposition to the motion, detailing New Jersey's clear position that there is no civil cause of action for perjury. Seven days *after* the motion was to be heard, Frost filed a brief in support of his

motion, and for the first time, gave this Court any case law on the subject—of course, all of it being out of state law.

Rule 11 states, in relevant part:

The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other papers; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law[.]

Frost signed the December 6, 1990, motion to amend, but failed to make a reasonable inquiry into existing case law. Frost admitted at oral argument that he failed to follow the strictures of Rule 11. After being instructed by this Court that New Jersey does not recognize a cause of action for civil perjury, and stating to Frost that the standard for judging a motion to amend is *Fed.R.Civ.P.* 12(b)(6), Frost responded "[l]et me tell you what happened. What happened, I did not know there was a New Jersey law against it when I filed the complaint." *See* March 22, 1991 transcript, at p. 15. Frost quite clearly didn't *stop*, for he filed a frivolous motion; he certainly didn't *look*, for he failed to do any research and failed to cite any case law on the subject; and he didn't *listen*, for he was given the opportunity by defense counsel to withdraw the motion after being advised by letter and citation to the appropriate cases, that New Jersey does not recognize a civil cause of action for perjury but he failed to pay heed. *See Lieb*, 788 F.2d at 157.

Additionally, courts have held that Rule 11 sanctions are appropriate when a moving party shifts the burden of research to the party opposing the motion. *See Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir. 1986), *cert. denied*, 479 U.S. 851, 107 S.Ct. 181, 93 L.Ed.2d 116 (1986). This is exactly what Frost did. By filing the motion to

---

**3.** On January 14, 1991, this Court sanctioned plaintiffs for failing to obey this Court's September 7, 1990 Order. Plaintiffs were ordered to pay the sum of $1,517.05.

**4.** Under New Jersey law, there is no private cause of action for perjury and/or false swearing. *Kantor v. Kessler*, 132 N.J.L. 336, 40 A.2d 607 (1945); *Harmon v. Holmes*, 712 F.Supp. 451 (D.N.J.1989), *N.J.S.A.* 2C:28–1.

amend without any case law, Frost waited to see what the defendants turned up before spending the time to do his own research. This form of motion practice cannot be tolerated.

While the Court has determined that sanctions are appropriate, the next issue to be addressed is the amount of sanctions to be imposed on Frost. Once a court determines that Rule 11 has been violated, sanctions are mandated. *Fed. R.Civ.P.* 11 ("If a pleading, motion, or other paper is signed in violation of this rule, the court ... shall impose ... an appropriate sanction ..."). However, a number of mitigating factors must be considered before imposing a Rule 11 sanction. *Doering,* 857 F.2d at 195–197. These factors include the sanctioned attorney's ability to pay, evidence that the attorney has already been subject to adverse scrutiny, and evidence that the sanctioned attorney has already been deterred sufficiently from filing frivolous motions. *Id.* at 195–197. Additionally, the Court must consider the amount of time available to the signer for conducting the factual and legal investigation, the necessity for reliance on a client for the underlying factual determination, the plausibility of the legal position advocated, whether the case was referred to the signer by another member of the bar and the complexity of the legal and factual issues implicated. *Pensiero,* 847 F.2d at 95.

Certainly, Frost's derelictions, were not the result of reliance on his client since it involved a purely legal question, and that legal issue could have been easily gleaned from a quick preview of this State's law—it did not require painstaking delving or research to discern the state of the law. After taking into consideration all of the mitigating factors, the Court concludes that both monetary sanctions and compulsory legal education will best deter Frost from exploiting the federal court system in the future. Defense counsel shall submit an affidavit detailing the fees and costs involved in having to respond to Frost's motion to amend. With this amount as a guidepost, the Court will come up with a reasonable, yet effective, monetary sanction, keeping in mind that Rule 11 should not be viewed as a fee shifting device. Additionally, this Court finds that Frost would reap great benefit by attending four seminars given by the Institute for Continuing Legal Education. *See Thomas v. Capital Security Services, Inc.,* 836 F.2d 866, 878 (5th Cir.1988); *United States v. Alexander,* 771 F.Supp. 830 (S.D.Tex.1991) (Lexis, Genfed library, Dist. file); *Prentiss Smith v. Our Lady of the Lake Hospital, Inc.,* 135 F.R.D. 139 (M.D.La.1991) (Lexis, Genfed library, Dist. file). One of the seminars must relate to law office management.[5] Another seminar must deal with some aspect of the Federal Rules of Civil Procedure, while the other two seminars must relate to federal court practice in general. Frost will have 18 months to complete the four legal seminars.

With respect to Mr. Bernstein's application for fees and costs in having to attend the March 18, 1991, hearing, the Court finds that Frost's failure to appear was unjustified. Frost knew about the hearing before he left for Florida and had ample opportunity to explain why he would not be able to attend. If the court was told that Frost had court ordered depositions in Florida, arrangements could have been made to accommodate his schedule. Mr. Bernstein shall submit an affidavit setting forth the fees and costs incurred in appearing at the Rule 11 hearing on March 18, 1991.

### ORDER

IT IS on this 6th day of September, 1991,

ORDERED that defendants' motion for Rule 11 sanctions is hereby granted; and it is further

ORDERED THAT Mr. Bernstein's motion for fees and costs in having to appear

---

**5.** During oral argument, Mr. Frost consistently placed the blame for his failure to appear, the scheduling difficulties encountered on these motion, and the "odd" timing involved in filing papers after the return date of the motion, on his office manager or a previously employed associate.

on March 12, 1991 is granted; and it is further

ORDERED that Mr. Bernstein shall submit an affidavit setting forth his fees and costs incurred in having to respond to Frost's motion to amend; and it is further

ORDERED that Mr. Bernstein shall supply an affidavit setting forth his fees and costs incurred in having to appear on March 18, 1991; and it is further

ORDERED that Frost must attend four seminars at the Institute for Continuing Legal Education as described in this Memorandum; and it is further

ORDERED that Frost attend the four seminars no later than 18 months from the date of this Order, and that he submit an affidavit certifying to his personal attendance at these seminars.