Jessica A. HOCKLEY, a Minor by Her Guardian Ad Litem, William HOCKLEY, and William Hockley and Margaret Hockley, Individually, Plaintiffs,

v.

SHAN ENTERPRISES LIMITED PARTNERSHIP d/b/a Comfort Inn And Pankaj Sheth, Defendants/Third Party Plaintiffs,

v.

LIEBER RICH AND SONS, INC., Middle Department Inspection Agency, Inc., Holby Valve Company, Inc., and Raypak, Inc., t/a Raypak, Third Party Defendants.

Civ.A. No. 96–cv–2796 (SSB).

United States District Court,
D. New Jersey.

Aug. 5, 1998.

John Gerard Devlin, Michael T. Malarick, John Gerard Devlin & Associates, P.C., Westmont, NJ, for Defendants/Third Party Plaintiffs.

Robert A. Assuncao, Steven F. Gooby, Piper & Marbury L.L.P., Princeton, NJ, for Third Party Defendant Raypak, Inc.

## OPINION ON MOTION FOR SANCTIONS

BROTMAN, District Judge.

Presently before the Court is third-party defendant Raypak, Inc.'s ("Raypak") Motion for Sanctions against defendant Shan Enterprises Limited Partnership ("Shan") pursuant to Fed.R.Civ.P. 11 ("Rule 11") and 28 U.S.C. § 1927. For the reasons discussed below, the Motion is denied.

### I. *FACTS AND PROCEDURAL BACKGROUND*

On April 22, 1995, Jessica Hockley was a guest in Room 716 in the Comfort Inn hotel in Absecon, New Jersey. She sustained second and third-degree scald burns while using the shower in her room. Defendant/Third–Party Plaintiff Shan owns and operates the hotel.

On July 5, 1996, counsel for Ms. Hockley filed an amended complaint against Shan alleging that it had failed to regulate the temperature of the hot water supplied to the shower in her hotel room or to warn guests of the potential dangers posed by the water temperature. On August 23, 1996, Shan filed a third-party complaint against a number of parties, including Raypak. This complaint alleged that Raypak had designed, manufactured, sold, and distributed defective boilers that had been responsible for Ms. Hockley's injuries.

On February 2, 1998, United States Magistrate Judge Joel B. Rosen executed an Order Approving Settlement. On February 6, 1998, following the reported settlement by the parties, this Court issued an Order of Dismissal, dismissing the action without costs and without prejudice. On March 2, 1998, a Stipulation of Dismissal with Prejudice as to Raypak, Inc. was filed, dismissing Shan's claims against Raypak with prejudice. On March 7, 1998, Raypak filed a motion with this court requesting sanctions against Shan under Rule 11 and 28 U.S.C. § 1927. On March 25, 1998, Raypak withdrew its motion for sanctions because it had failed to comply with the twenty-one day "safe harbor" notice period required by Rule 11. On April 16,

1998, Raypak refiled its motion, having provided Shan with the requisite notice.

## II. *DISCUSSION*

Raypak contends that Rule 11 sanctions should be imposed against Shan because it failed to conduct a reasonable inquiry into Raypak's culpability before filing its third-party action. Raypak also seeks attorneys' fees pursuant to 28 U.S.C. § 1927 for Shan's "vexatious and inexcusable delay in dismissing the action against Raypak."

Shan counters that its pre-suit investigation was reasonable and revealed an adequate basis for liability against Raypak. In addition, with respect to Raypak's request for sanctions under 28 U.S.C. § 1927, Shan contends that its conduct was not in "bad faith."

More importantly, Shan advances two arguments that Raypak's Rule 11 motion is procedurally barred. First, it contends that Raypak's late filing of its Rule 11 motion did not comply with Local Rule 11.3, which requires that Rule 11 motions be filed prior to the entry of final judgment. Second, it contends that, since it withdrew its claim before Raypak moved for sanctions, Raypak's motion is barred by the "safe harbor" provision of Rule 11.

## A. SANCTIONS UNDER RULE 11

Since its adoption in 1937, Rule 11 has undergone several significant permutations. Throughout its history, Rule 11 has required the signature of an attorney submitting pleadings to the court.[1] It has also always provided for sanctions against attorneys who fail to comply with its requirements. The basic provisions of Rule 11 have remained the same, but the precise conduct required of attorneys by the rule and the manner of implementing the rule's provisions have changed over time.

Rule 11 was amended in 1983 and again in 1993.[2] During the intervening period, the Third Circuit in 1988 adopted a supervisory rule, discussed *infra*, that affected the application of the 1983 rule. The adoption of this supervisory rule led to the implementation of identical rules governing United States District Courts for the District of New Jersey, Local Rule ("L.Civ. R.") 11.3 and General Rule ("G.R.") 12.L. A brief overview of the evolutionary developments of Rule 11 is instructive.

### 1. Rule 11—Pre–1993

Throughout its existence, Rule 11 has required attorneys to sign all papers submitted to the court. In its 1937 incarnation, an attorney's signature certified that to the best of that attorney's "knowledge, information, and belief there is good ground to support [the pleading]; and that it is not interposed for delay." Fed.R.Civ.P. 11 Advisory Committee's Notes (1983 Amendments) (Foundation Press 1992). The 1937 rule, however, was not effective in deterring abuses of the judicial system. Fed.R.Civ.P. 11 Advisory Committee Notes (1983 Amendments) at 85 (West 1998).

Rule 11 was amended for the first time in 1983. The 1983 amendment added that an attorney's signature on a paper indicated that the paper was "well grounded in fact" to the best of his or her knowledge, formed after a reasonable inquiry, and was not being submitted for any improper purpose. Fed. R.Civ.P. 11 (West 1991). The 1983 rule also provided that "the court . . . *shall* impose upon the person who signed [the improper paper] . . . an appropriate sanction." *Id.* (emphasis added).

The 1983 version of Rule 11 was intended to enhance the rule's effectiveness in deterring abuses of the judicial process. *See* Fed. R.Civ.P. 11 Advisory Committee Notes (1983 Amendments) at 85 (West 1998). To attain this end, the 1983 rule was meant to emphasize attorney responsibility and reduce the reluctance of the court to impose sanctions. *Id.* The "well grounded in fact" requirement placed a heavy burden on attorneys to "look before leaping" and investigate the basis of papers before submitting them to the court.

---

1. The rule has since been amended to include "motions and other papers."

2. Rule 11 was also amended in 1987, but the changes were technical and not substantive. *See* Fed.R.Civ.P. 11 Advisory Committee Notes (1987 Amendment) at 86 (West 1998).

*See id.* The language stating that the court "shall" impose sanctions upon a finding that such sanctions are warranted limited courts' discretion in imposing sanctions. *See, e.g., Bradgate Assocs., Inc. v. Fellows, Read & Assocs., Inc.,* 999 F.2d 745, 753 n. 6 (3d Cir.1993) (recognizing that the 1983 incarnation of Rule 11 limited courts' discretion in imposing sanctions, and further that the then-proposed 1993 Rule was more permissive); *Frantz v. United States Powerlifting Federation,* 836 F.2d 1063, 1065 (7th Cir. 1987), *Weil v. Markowitz,* 829 F.2d 166, 171 (D.C.Cir.1987) (both recognizing that decision whether to impose sanctions under 1983 Rule 11 was non-discretionary). The 1983 Rule 11, therefore, served the dual goals of emphasizing attorney responsibility and increasing courts' ability and willingness to impose sanctions. Fed.R.Civ.P. 11 Advisory Committee Notes (1983 Amendment) at 86 (West 1998). The 1983 rules committee fully expected that the new rule would result in sanctions being more frequently imposed. *Id.* at 85.

In 1988, however, the tide in the Third Circuit seemingly shifted away from the pro-sanction bent of 1983 Rule 11. In *Mary Ann Pensiero, Inc. v. Lingle,* 847 F.2d 90, 92 (3d Cir.1988), the plaintiffs had sued the defendants under anti-trust laws. Summary judgment was granted against the plaintiffs, and the Third Circuit affirmed. After receiving a copy of the Order affirming the district court's grant of summary judgment, but before the mandate had issued, the defendants moved to impose sanctions on the plaintiffs under Rule 11 on the grounds that the plaintiffs had not conducted a reasonable investigation in to the facts prior to filing suit. *Id.* at 93. The district court granted the sanctions. *Id.* at 94. The Third Circuit reversed, holding that while the district court had jurisdiction to entertain the motion following the

entry of final judgment,[3] the facts of the case did not warrant sanctions. *Id.* at 94–97.

More importantly, the court "[adopted] as a supervisory rule for the courts in the Third Circuit a requirement that all motions requesting Rule 11 sanctions be filed in the district court before the entry of a final judgment." *Id.* at 100. The court adopted this supervisory rule out of concern about the inefficiency of "fragmented appeals": where an appeal of the disposition of a case on its merits is followed by an appeal of the disposition of a Rule 11 motion. *Id.* at 99; *see* Lite, Comment on General Rule for the District of New Jersey 12.L, *New Jersey Federal Practice Rules* at 91 (Gann 1997). The decision in *Pensiero* later resulted in the implementation of L. Civ. R. 11.3, which states that "all applications for sanctions under Fed.R.Civ.P. 11 shall be filed with the Clerk prior to the entry of final judgment notwithstanding the provisions of any other Rule of this Court." *New Jersey Federal Practice Rules* (1997 Supplement) at 14 (Gann 1997); *see also* G.R. 12.L, *New Jersey Federal Practice Rules* at 72 (Gann 1997).

The jurisdiction of district courts to entertain Rule 11 motions was extended further in *Schering Corp. v. Vitarine Pharmaceuticals,* 889 F.2d 490, 496 (3d Cir.1989). In *Schering,* the plaintiff pharmaceutical companies sued the defendant pharmaceutical companies under the Lanham Trade–Mark Act. *Id.* at 491. The plaintiffs voluntarily dismissed the action, but six weeks after this dismissal the defendants moved for sanctions. *Id.* at 494. The District Court granted sanctions, *id.,* and the Third Circuit reversed, *id.* at 496. Because *Schering* involved a voluntary dismissal and not a final judgment, *Schering* presented an issue of first impression in the Third Circuit: whether district courts have jurisdiction to entertain Rule 11 motions after a voluntary dismissal. *Id.* at 494. The Third Circuit determined that while a district

3. The Third Circuit held that a district court has jurisdiction to entertain motions for sanctions submitted even after an appellate affirmance on the merits of a case because a motion for sanctions is "uniquely separable" and "collateral" from a decision on a case's merits. *Pensiero,* 847 F.2d at 98. Therefore, a motion for sanctions under Rule 11 after an affirmance on the merits is not barred by the doctrines of *res judicata* or

collateral estoppel, or by a judge-made rule "[divesting] the district court of jurisdiction over [a] case pending disposition of the appeal." *Id.* at 97. The Third Circuit's holding in *Pensiero* declares that a district court is not jurisdictionally barred (either by *res judicata* or collateral estoppel) from hearing a motion for Rule 11 sanctions after an affirmance on the merits. *See id.* at 98.

court has "jurisdiction to entertain and decide [a] Rule 11 motion after defendants suffer[ ] a voluntary dismissal under Rule 41(a)(1)(i)," sanctions were not warranted by the facts of the case. *Id.* at 496–500.[4]

Shan contends that this court should deny Raypak's motion for sanctions because *Schering* does not grant this court jurisdiction over Raypak's Rule 11 motion. Shan contends that this is so because the instant action was dismissed pursuant to Rule 41(a)(1)(ii). In making this contention, Shan suggests that the holding in *Schering* was limited to cases dismissed under Rule 41(a)(1)(i).[5] Shan, however, provides no basis for this distinction.

Furthermore, this distinction runs counter to the precedent set by the United States Supreme Court in *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). In *Hartmarx*, the defendants filed counterclaims alleging violations of anti-trust laws against the plaintiff and its subsidiaries. *Id.* at 395, 110 S.Ct. 2447. The defendants filed these counterclaims in November, 1983. *Id.* at 388–89, 110 S.Ct. 2447. Plaintiffs moved for dismissal and sanctions under Rule 11. *Id.* at 389, 110 S.Ct. 2447. In April, 1984, defendant voluntarily dismissed the counterclaims pursuant to Rule 41(a)(1)(i). This dismissal became effective in July, 1984. *Id.* The court heard oral argument on the motion for sanctions in June, 1984, and took the motion under advisement. *Id.* In February, 1988, over 3–1/2 years after hearing oral argument on the Rule 11 motion, the district court granted sanctions. *Id.* The Supreme Court affirmed the award of sanctions, holding that "a volun-

tary dismissal does not expunge the Rule 11 violation" since the violation "is complete when the paper is filed." *Id.* at 395, 110 S.Ct. 2447. The Court also concluded that a district court "may enforce Rule 11 even after the plaintiff has filed a notice of dismissal under Rule 41(a)(1)," making no distinction between Rules 41(a)(1)(i) and 41(a)(1)(ii). *Id.* at 398, 110 S.Ct. 2447. Therefore, the developments in Rule 11 and the case law interpreting them, culminating in *Hartmarx*, affirm that this court possesses jurisdiction to entertain Raypak's motion for sanctions.

### 2. Rule 11—Post–1993

In 1993, amid concerns about "problems that [had] arisen in the interpretation and application" of the 1983 rule, Rule 11 was amended to include a "safe harbor" provision.[6] The current version of the rule reads in relevant part:

Rule 11. Signing of Pleadings, Motions, and Other Papers; Representations to Court; Sanctions

. . . .

(c) Sanctions

. . . .

(1) How Initiated.

. . . .

(A) By Motion. A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5, but shall not be filed or presented to the court unless, within 21 days after service of the motion (or such

---

**4.** Despite *Pensiero*'s supervisory rule, the Third Circuit in *Schering* had to address the motion's merits because *Schering* involved a voluntary dismissal rather than a final judgment. Thus, the motion in *Schering* was not procedurally barred by *Pensiero*'s supervisory rule. The holdings of *Pensiero* and *Schering* are not inconsistent but complementary: the latter extends the jurisdiction recognized in the former.

**5.** Rule 41 reads, in pertinent part, as follows:
Rule 41. Dismissal of Actions
  (a) Voluntary Dismissal: Effect Thereof.
    (1) By plaintiff; by Stipulation.
    ... [a]n action may be dismissed by the plaintiff without order of court (i) by filing a

notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs; or (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action.
Rule 41(a)(1)(i) pertains to the voluntary dismissal of cases prior to service of an answer or summary judgment motion. Rule 41(a)(1)(ii) pertains to voluntary dismissal following appearances.

**6.** Other significant revisions were made to the rule, but only the addition of the "safe harbor" provision is relevant to the instant case.

other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.

Fed.R.Civ.P. 11(c)(1)(A).

The "safe harbor" provision requires the party moving for sanctions to notify the party against which it seeks sanctions of its intention to move for sanctions. The court can impose sanctions only if, after twenty-one days, the non-moving party has not withdrawn the offending petition or "acknowledge[d] candidly that it does not currently have evidence to support a specified allegation." Fed.R.Civ.P. 11 Advisory Committee Notes (1993 Amendment) at 89 (West 1998). The express purpose of this amendment to the rule was to prevent abuses of Rule 11 sanctions by providing parties a "safe harbor" within which they will not be subject to sanctions unless they refuse to withdraw offending papers filed with the court. *Id.*

The language and intent of the 1993 Rule appear to preclude bringing sanctions after the party against which sanctions are sought has voluntarily dismissed its suit. Implicit in the amended Rule 11 is the policy provision that, absent clearly abusive behavior akin to contempt of court, a party will always have the chance to withdraw offending papers it has submitted. *See id.* It has been suggested that the "safe harbor" provision of the 1993 rule was intended as a check against satellite litigation. *See Daliessio v. DePuy, Inc.,* 178 F.R.D. 451, 452–53 (E.D.Pa.1998); *see also* Howard A. Cutler, *A Practitioner's Guide to the 1993 Amendment to Federal Rule of Civil Procedure 11,* 67 Temple L.Rev. 265, 286, 293 (1994) (stating that the 1993 amendment to Rule 11 is likely to have

the effect of reducing satellite litigation over Rule 11 sanctions). Making Rule 11 sanctions available to parties requesting them even after the end of a case would seemingly confound this purpose.

■ Furthermore, the *Hartmarx* principle that a Rule 11 violation is complete when the offending paper is filed with the court appears to conflict with the present version of Rule 11 which provides that a violation of Rule 11 is *not* complete unless the offending paper is *not* withdrawn within 21 days following notice by the moving party. Indeed, other district courts have recognized *Hartmarx* as being superseded by the 1993 Rule 11. *See Photocircuits Corp. v. Marathon Agents, Inc.,* 162 F.R.D. 449, 452 (E.D.N.Y. 1995) (holding that 1993 Rule 11 superseded *Hartmarx* and precluded award of sanctions following a voluntary dismissal of the action); *Morroni v. Gunderson,* 169 F.R.D. 168, 171 (M.D.Fla.1996) (holding that "a party who seeks Rule 11 sanctions based upon allegations in a complaint [ ] cannot wait until the action has been voluntarily dismissed by the opposing party because the party who voluntarily dismisses a case has withdrawn the offending pleading by dismissing the case") (citing *Photocircuits Corp.,* 162 F.R.D. 449 (E.D.N.Y.1995)). Therefore, the text of the current Rule 11 and current authority interpreting it indicate that a motion for sanctions under Rule 11 must be submitted prior to the dismissal of a case.[7]

■ Raypak concedes that Shan had nothing to withdraw after the voluntary dismissal, but asserts that Shan should still be sanctioned because it has failed to "acknowledge[ ] candidly that [it does] not have evidence to support" its claims against Raypak.

---

7. Raypak cites what it believes to be contrary authority from this District. In *Y.J. Sons & Co., Inc. v. Anemone, Inc.,* 212 B.R. 793, 808 (D.N.J. 1997), the District Court affirmed a Bankruptcy Court's award of sanctions subsequent to the dismissal of the main action. This result would seem to run contrary to Rule 11. However, there is a significant distinction between the rule in *Y.J. Sons, Inc.* and the rule in the instant case.

Sanctions were awarded in *Y.J. Sons, Inc.* pursuant to Bankruptcy Rule 9011. The two rules today are almost identical. Both contain a 21–day safe harbor provision. However, in August 1997, when *Y.J. Sons, Inc.* was decided, Bank-

ruptcy Rule 9011 did not contain the 21–day safe harbor provision it contains today. *See* Bankr. Rule 9011, 11 U.S.C.A. (West 1984). In fact, the rule under which *Y.J. Sons, Inc.* was decided was similar to the 1983 Rule 11. *See id.* The amendments to Bankruptcy Rule 9011 that resulted in the inclusion of the safe harbor provision did not become effective until December 1997, four months after *Y.J. Sons, Inc.* was decided. Bankr. Rule 9011, 11 U.S.C.A. (West Supp.1998). Therefore, the post-final-judgment sanctions imposed in *Y.J. Sons, Inc.* were imposed under a fundamentally different rule than the one at issue in the instant case.

"[A] party will not be subject to [Rule 11] sanctions ... unless, after receiving the [Rule 11] motion, it refuses to withdraw that position *or* to acknowledge candidly that it does not currently have evidence to support a specified allegation." Fed.R.Civ.P. 11 Advisory Committee Notes (1993 Amendment) at 89 (West 1998) (emphasis added). A party is not required both to withdraw its position and make a candid acknowledgment to avoid Rule 11 sanctions; withdrawal alone is sufficient. Since Shan withdrew its position when it voluntarily dismissed its claims, it is not subject to Rule 11 sanctions. Accordingly, Raypak's motion is denied to the extent that it requests sanctions under Rule 11.

### B. SANCTIONS UNDER 28 U.S.C. § 1927

[redacted] Raypak also seeks sanctions pursuant to 28 U.S.C. § 1927. That section provides, in relevant part:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct

"To justify the imposition of [sanctions under § 1927], [an attorney's] conduct must be of an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation." *Baker Industries, Inc. v. Cerberus, Ltd.*, 764 F.2d 204, 208–209 (3d Cir.1985). Raypak argues that Shan knew or should have known "as early as October 1996" that their third-party action against Raypak was frivolous. It contends that Shan acted in bad faith by continuing to sustain the action.

[redacted] Shan disputes the contention that it acted in bad faith. It contends that its pre-suit investigation revealed that the Raypak boilers were "an integral part of the water heater system that ... supplied scalding water" to the shower stall occupied by the minor plaintiff. Response Brief at 17. Prior to filing its third-party action, Shan obtained evidence that Raypak had manufactured two of the boilers in the hotel's hot water system. It also determined that the hot water in Room 716 was measured at a peak temperature of 160 degrees. Shan Exh. G at 2. Furthermore, during discovery, Shan received specifications for the Raypak boilers that indicated that the boilers were supposed to "assure constant 140 [degree] F water to both fan coil unit and the hot water fixtures." Shan Exh. E at 3. It also learned that "most adults will suffer a third degree burn if exposed to 150°F water for only two seconds," Shan Exh. L at 5, that the water passing through the heat exchanger was 203°F, and that the water in the storage tank was 154°F. *Id.* at 7. Shan also produced evidence that at least one of the Raypak boilers was in use on the date Ms. Hockley was injured. Deposition of Norman Bird, January 9, 1997, Shan Exh. F at 63–64.

Considering the evidence, there are no grounds to support an inference of bad faith on the part of Shan in bringing or maintaining its third-party action against Raypak. On the contrary, Shan knew when it brought this third party action that Raypak's boilers were part of the hotel's hot water system and that the water temperature in the shower in Room 716 exceeded the "constant" temperature assured in the specifications for the Raypak boilers. Though these facts do not prove that Raypak was liable for Ms. Hockley's injuries, they do provide a reasonable ground for initiating the suit against Raypak. Furthermore, considering the evidence obtained during discovery, Shan did not act in bad faith in maintaining its suit against Raypak. Since Shan's actions in the instant litigation can not be considered egregious or in bad faith, sanctions under 28 U.S.C. § 1927 are not warranted.

## III. *CONCLUSION*

For the reasons stated above, Raypak's Motion for Sanctions under Rule 11 and 28 U.S.C. § 1927 is denied.