Brent L. VANDANACKER and Vickie
L. VanDanacker, Plaintiffs,

v.

MAIN MOTOR SALES CO., Life Inves-
tors, Company of America, David A.
Lake, Marcia VanValkenberg, Nor-
west Bank Minnesota, N.A. and John
Doe, Defendants.

No. 98–1339 DSD/JMM.

United States District Court,
D. Minnesota.

July 18, 2000.

William H. Crowder, Susan C. Bedor, Crowder & Bedor, St. Paul, MN, Richard J. Fuller, Mansfield Tanick & Cohen, Minneapolis, MN, Peter F. Barry, Barry Law Office, Maplewood, MN, for Plaintiffs Brent L. VanDanacker and Vickie L. Van-Danacker.

Gregory J. Johnson, Johnson & van Vliet, St. Paul, MN, for Defendants Main Motors Sales Co., David A. Lake, Marcia Van Valkenberg and John Doe.

Steven G. Mahon, Ryan Mahon & Brown, St. Paul, MN, for Defendant Life Investors Co. of America.

James L. Volling, Faegre & Benson, Minneapolis, MN, for Defendant Norwest Bank Minnesota, N.A.

## ORDER

DOTY, District Judge.

This matter is before the court on multiple objections to the report and recommendation of Magistrate Judge John M. Mason dated April 25, 2000. Defendants Main Motor Sales Co., David A. Lake, Marcia VanValkenberg and John Doe object to that portion of the report wherein the magistrate judge recommends that Main Motor's motion for attorney fees be denied without prejudice [Doc. No. 87]. Similarly, defendant Norwest Bank ("Norwest") objects to the recommend denial without prejudice of its motion for costs and attorney fees [Doc. No. 90].[1] The objecting defendants contend that the magistrate judge erred in concluding that under the facts and procedural posture of this case, a motion for sanctions is not the appropriate vehicle for awarding relief to defendants. Defendant Norwest has also filed a motion to strike certain material from plaintiffs' responsive memorandum [Doc. No. 123].

Title 28 United States Code Section 1927 provides for the imposition of costs and attorney's fees against an attorney who "so multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. A court may also impose sanctions pursuant to its inherent authority to punish "conduct which abuses the judicial process." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44–45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). Where the court sanctions attorney conduct under its inherent power, the allegedly offensive conduct must "constitute[ ] or [be] tantamount to bad faith." *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 767, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). However, as this court has previously noted, the standard to be applied to a motion for sanctions under Section 1927 is less clear. *See Barnes v. The Benham Group, Inc.,* 22 F.Supp.2d 1013, 1024 (D.Minn.1998).

In *O'Connell v. Champion Intern. Corp.,* 812 F.2d 393, 395 n. 2 (8th Cir.1987), the Eighth Circuit specifically declined to rule on the issue of whether the statute requires a finding of bad faith in addition to unreasonable conduct. However, citing *O'Connell,* the appellate court subsequently indicated that "the language of § 1927 appears to require both a finding of objectively unreasonable behavior and a finding of bad faith." *NAACP v. Atkins,* 908 F.2d 336, 340 (8th Cir.1990). Then, in a contemporaneous decision, the court identified

---

1. The sum requested is the amount that Plaintiffs sought in damages for their claim for violation of Minn.Stat. § 168.71(b)(4), the Motor Vehicle Installment Sales Act. Plaintiffs state that this is the amount of the contract due and payable. However, the amount of the contract as stated by Plaintiffs in other parts of the Complaint are only as high as $20,652.82, and it is doubtful that even this amount would be recoverable, even if Plaintiffs prevailed.

the standard as "whether the attorney's conduct 'viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court.'" *Perkins v. Spivey,* 911 F.2d 22, 36 (8th Cir. 1990) (citations omitted).

In light of the unusual procedural posture of this case, where the court is being asked to impose sanctions well after the claims between the parties have been dismissed, the court supports the magistrate judge's prudent decision to adopt the more stringent standard under *Atkins,* which requires a finding of bad faith. Further, the court has reviewed the extensive file and the transcript of the hearing on these motions and agrees with the magistrate judge that the complex facts and procedural history of this case do not lend themselves to a summary decision on whether plaintiffs' counsel exercised bad faith with respect to settlement negotiations and the filing of a motion for class certification and for partial summary judgment. "The imposition of sanctions is a serious matter and should be approached with circumspection." *O'Connell,* 812 F.2d at 395.

However, as the magistrate judge noted in his report, the claims of defendants are "not insubstantial" and may support an action for malicious prosecution or abuse of process. Therefore, in order to preserve the right of defendants to bring a separate action for recovery of their attorney fees, the court will adopt the report and recommendation of the magistrate judge that defendants' motions for sanctions be denied without prejudice.

■ With respect to the motion to strike brought by defendant Norwest, Norwest cites Rule 12(f) as the basis for its motion. A motion to strike under Rule 12(f) is the appropriate remedy for the elimination of "redundant, immaterial, impertinent, or scandalous matter" in a pleading. Fed.R.Civ.P. 12(f). However, Rule 12(f) is applicable only to motions to strike portions of "pleadings," which Rule 7(a) defines as complaints, answers, replies to counterclaims, answers to cross-claims,

third-party complaints, and third-party answers. *See* Fed.R.Civ.P. 7(a). Therefore, a Rule 12(f) motion to strike is not the proper avenue for challenging plaintiffs' memorandum in opposition to the motion for attorney fees and Norwest's motion to strike is denied.

After conducting a de novo review of the file and record, the court adopts the Report and Recommendation of United States Magistrate Judge John M. Mason dated April 25, 2000. Accordingly, **IT IS HEREBY ORDERED** that:

1. The motion of defendant Life Investors for attorney fees and costs [Doc. No. 83] is denied without prejudice.

2. The motion of defendant Main Motor Sales Co. for attorney fees and costs [Doc. No. 87] is denied without prejudice.

3. The motion of defendant Norwest Bank for attorney fees and costs [Doc. No. 90] is denied without prejudice.

4. The motion of defendant Norwest Bank to strike material from plaintiff's opposition memorandum [Doc. No. 123] is denied.

## *REPORT AND RECOMMENDATION*

MASON, United States Magistrate Judge.

The above matter came on for hearing before the undersigned on December 1, 1999 upon Defendants' Motion for Awards of Attorneys' Fees and Costs [Docket Nos. 83, 87 and 90]. William H. Crowder, Esq., Susan C. Bedor, Esq., Richard J. Fuller, Esq. and Peter F. Barry, Esq. appeared on behalf of Plaintiffs; Gregory J. Johnson, Esq. appeared on behalf of Defendants Main Motors Sales Co., David A. Lake, Marcia Van Valkenberg and John Doe; Steven G. Mahon, Esq. appeared on behalf of Defendant Life Investors Company of America; and James L. Volling, Esq. appeared on behalf of Defendant Norwest Bank Minnesota, N.A.

The matter is before the undersigned for a Report and Recommendation to District Court Judge David S. Doty, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B). Upon the following Findings of Fact/Report, it is recommended that Defendants' Motions for Attorneys' Fees and Costs [Docket Nos. 83, 87 and 90] be denied without prejudice.

## FINDINGS OF FACT/REPORT

Defendants filed the current Motions [Docket Nos. 83, 87 and 90], seeking an award of attorneys' fees and costs based on what they allege is improper conduct on behalf of Plaintiffs and their counsel. Defendants allege that Plaintiffs failed to investigate the claims of Plaintiffs, and then persisted with these claims even after they were made aware that the claims were factually or legally groundless. Defendants also allege that Plaintiffs multiplied the proceedings by filing further pleadings and motions based upon these unsubstantiated claims with the improper purpose of seeking leverage for settlement discussions.

The parties in this case have filed voluminous pleadings on this issue, which reflect the sharply conflicting views each side has toward the facts and law. Before we proceed with the analysis of these issues, we will provide a summary of the facts underlying this suit and the current Motions.

## I. PROCEDURAL HISTORY

### A. Credit Refund Claim

Plaintiffs' Complaint against Main Motors, Life Investors, David A. Lake, Marcia Van Valkenberg and John Doe included allegations that Defendants failed to refund the unused portion of the insurance premiums paid on the purchase of the first car when Plaintiff Brent VanDanacker purchased the second vehicle. The parties have referred to this as the "Credit Refund" claim.

The Defendants, as to the Credit Refund claim, seek sanctions based upon their contention that Plaintiffs and their counsel commenced the action when they knew, or should have known, that this claim was without factual merit; that they used the pendency of the litigation to attempt to extract settlement sums; that when no settlement offers were received, they stepped up the pressure on Defendants by moving to amend to seek class status as to this claim, and then further increased the settlement pressure by bringing a Motion to denominate the claim as a claim on behalf of the class; and that they did this although the discovery confirmed what had initially been disclosed—Plaintiff in fact had received the credit to which he was entitled. Plaintiffs and their counsel persisted in this conduct until it was apparent that the Defendants would not pay them a tribute in the form of a settlement payment, whereupon Plaintiffs ultimately dismissed a claim which should never have been brought or maintained. As a result, the Defendants incurred substantial attorneys' fees and costs in defending themselves against a meritless claim.

The facts underlying these claims were based upon Plaintiff Brent VanDanacker's April 30, 1997 purchase of a 1993 Plymouth Laser from Defendant Main Motors. Plaintiff purchased the vehicle on an installment sales contract, financed by Defendant Norwest Bank. In this agreement, Plaintiff opted to purchase credit life and disability insurance issued by Defendant Life Investors.

On July 17, 1997, Plaintiff returned to Main Motors and traded the vehicle in for a 1997 Pontiac Sunfire on another installment contract, again financed by Norwest Bank. He was thus entitled to a refund of the unearned portion of the insurance premium on his first car. Plaintiff again purchased credit life and disability insurance. Part of the down payment for this vehicle was to come from the refund of the unearned insurance premium from the first contract, which Mr. VanDanacker had agreed to apply toward the second con-

tract. Plaintiff contended that Defendants failed to give him credit for this refund.

On April 25, 1998, Plaintiffs filed a Complaint against Main Motors, David A. Lake, Marcia Van Valkenberg and John Doe (collectively referred to hereinafter as "Main Motors") and Life Investors, alleging violations of the Truth in Lending Act (15 U.S.C. § 1638), Motor Vehicle Installment Sales Act (Minn.Stat. § 168.75(b)(4)), Deceptive Trade Practices Act (Minn.Stat. §§ 8.31, 325D.44 and 325F.69) and unlawful insurance sales. These allegations were based in part upon Defendants' alleged failure to apply the refund of the unearned insurance premiums to the purchase of the second vehicle. The credit refund claims were against Main Motors as the seller of the vehicle on an installment sales contract; David A. Lake, as Assistant Finance Manager at Main Motors; Marcia VanValkenberg, as a salesperson for Main Motors; John Doe; and Life Investors, under the theory of respondeat superior, alleging that Main Motors acted as its agent in selling the credit insurance. The parties have not directly addressed the separate question of whether there was any individual, as opposed to corporate, liability.

On June 15, 1998, counsel for Defendant Life Investors sent a letter to counsel for Plaintiffs explaining that Plaintiff Brent VanDanacker had in fact received credit for the refund for the unearned insurance premium on July 17, 1997, and had applied it toward his new vehicle purchase (Crassweller Aff., Exh. A). In response to this letter, counsel for Plaintiff informed Life Investor's counsel on June 17, 1998 that it would dismiss the Complaint against Life Investors once it received an Affidavit from a Life Investors representative confirming the information represented in order to prevent the need to depose Life Investors in the future (Crassweller Aff., Exh. B).

On June 22, 1998, despite learning from Defendant Life Investors that the credit refund claim was factually groundless, counsel for Plaintiffs wrote a letter to Defendant Main Motors demanding the sum of $28,587.18 [1] (plus attorneys' fees) to settle the case, leaving the offer open for 30 days (Johnson Aff., Exh. B). Counsel for Main Motors alleges that Plaintiffs planned to file a motion to amend after the 30 days passed if the offer was not accepted. *See* Docket No. 72; *see also* Johnson Aff., Exh. H. This offer was rejected by Main Motors.

On July 14, 1998, counsel for Plaintiffs wrote to Defendant Life Investors to advise that the offer to dismiss was "inoperative," as Plaintiffs intended to amend the Complaint to allege a class action (Crassweller Aff., Exh. C). On July 23, 1998, Plaintiffs moved to Amend their Complaint [Docket No. 10]. Plaintiffs reasserted the "Credit Refund Claim" against Defendants Main Motors and Life Investors, as well as the individual Defendants David A. Lake, Marcia Van Valkenberg and John Doe. The Amended Complaint sought class action status for the claims, and attempted to establish Plaintiffs as proper class representatives.[2] On August 19, 1998, this Court granted the Motion to Amend without reaching the merits of the new allegations. *See* Docket No. 22.

In November and December of 1998, Defendants took the depositions of Plaintiffs. During the course of these depositions, Plaintiffs admitted that they had in fact received the credit that they were alleging had been denied to them. During his deposition, Plaintiff Brent VanDanacker was shown documents which established that he signed statements providing that the refunds from his service contracts and

---

**1.** The magistrate judge also recommends the denial of the motion of defendant Life Investors Company of America for attorney fees and costs [Doc. No. 83]. Life investors does not object to that recommendation.

**2.** The Amended Complaint also sought to add Norwest Bank as a Defendant, alleging Norwest was liable as a holder of the installment contracts.

unused credit insurance would be applied toward the purchase of his Pontiac Sunfire (Johnson Supplemental Aff., Exh. 1–3).[3]

Defendants called to Plaintiffs' attention that this testimony and other evidence substantiated that the credit refund claim was factually unsound. On February 18, 1999, counsel for Defendant Main Motors sent a letter to Plaintiffs' counsel again laying out the factual summary to establish that Plaintiffs' credit refund claim was baseless. Defendant reminded Plaintiffs' counsel of the "obligation to promptly dismiss claims that have no plausible basis in fact," and informed Plaintiffs of Defendant's intention to pursue sanctions if the claim was not dismissed (Johnson Aff., Exh. C). Plaintiffs did not respond to this letter.

Counsel for Defendant Main Motors followed up with another letter to Plaintiffs' counsel on April 5, 1999. This letter addressed each of the claims and outlined why there was no legal or factual basis for any of the claims, and no basis to pursue these claims on behalf of others in a class action. Defendant again requested that Plaintiffs voluntarily dismiss the credit refund claim and stated their intention to pursue sanctions (Johnson Aff., Exh. D). On April 16, 1999, Plaintiffs' counsel responded by letter, stating that Plaintiffs did not intend to dismiss the suit (Johnson Aff., Exh. E).

Counsel for Defendant Life Investors wrote to Plaintiffs' counsel on April 12, 1999, requesting that the claim be dismissed for lack of factual basis. The letter also provided Plaintiffs the option of rescinding the contract for a full refund of the insurance premium. It further confirmed a December 21, 1998 letter providing that Defendant Life Investors would seek sanctions if the claim was not dismissed (Crassweller Aff., Exh. E). Coun-

sel for Plaintiffs responded on April 19, 1999 refusing the offer to rescind (Crassweller Aff., Exh. L).

Rather than dismiss, on May 14, 1999, Plaintiffs served a Motion for Class Certification and a Motion for Partial Summary Judgment [Docket No. 54]. Then, on May 25, 1999, counsel for Plaintiffs contacted counsel for Defendant Main Motors, offering to settle with all Defendants for $7,000 (Johnson Aff., ¶ 8). This offer was rejected by Main Motors on June 10, 1999, and Defendants proceeded to respond to the Motions, due June 14, 1999.

On June 26, 1999, counsel for Main Motors sent a letter to counsel for Plaintiffs after receiving no responsive memoranda on Plaintiffs' Motions (Johnson Aff., Exh. F). On June 28, 1999, counsel for Plaintiffs responded to counsel for Main Motors to inform it that Plaintiffs had authorized the dismissal of the suit and that he would confirm this with a letter, but did not do so (Ahrens Aff., ¶ 2). On June 28, 1999, Plaintiffs signed a Stipulation of Dismissal to Dismiss Defendant Life Investors with prejudice. (This document is filed without a separate docket number, immediately preceding Docket No. 61.) No separate Order for Dismissal was submitted or signed as to Defendant Life Investors. Orders of Dismissal were signed on June 28, 1999 as to Defendant Main Motors [Docket No. 58] and on July 1, 1999 as to Defendants David A. Lake and Marcia VanValkenberg [Docket No. 59]. (These appear to have been submitted by Plaintiffs, but no Stipulation or transmittal letter appears in the file.) Plaintiffs later requested that the Court "enter judgment dismissing this case on the merits with prejudice" and the Court entered the proposed Order on July 29, 1999. [Docket

---

**3.** Plaintiff specifically noted in his deposition that the language "I Brent Van Danacker assign the balance of my refunds to Main Motors Chevrolet" and "Balance of refunds to be applied to the $500 open receivable" was written on one of the documents at the time

he signed it (Johnson Supplemental Aff., Exh.3). Any other language that counsel for Plaintiffs allege reflects "tampering" with the documents is irrelevant, and does not appear to justify their failure to acknowledge the fact that the refund credit was received.

No. 611]. Judgment was entered the following day. [Docket No. 62].

## B. Holder Liability Claim

Plaintiffs' Amended Complaint [Docket No. 10] added a claim against Norwest Bank, contending that as a "holder" of Plaintiffs' installment contract, Norwest was also liable for the allegedly improper conduct of Main Motors. Defendant Norwest Bank seeks sanctions upon the ground that Plaintiffs knew or should have known as a matter of law that their claim was without merit; that they used the pendency of the litigation to attempt to extract settlement sums; that when Norwest refused settlement demands, Plaintiffs raised the pressure against it as they had against other Defendants, and when no settlement offers were received from Norwest, Plaintiffs increased the pressure by bringing a Motion to denominate the claim as a claim on behalf of the class; and that they did this although the Court of Appeals for the Eighth Circuit had confirmed what Norwest had initially argued. Plaintiffs and their counsel persisted in this conduct until it was apparent that the Defendants would not pay them a tribute in the form of a settlement payment, whereupon Plaintiffs ultimately dismissed a claim which should never have been brought or maintained. As a result, these Defendants have incurred substantial attorneys' fees and costs in defending themselves against a meritless claim.

Norwest urgently contended that the standard "holder" language in a contract does not create new rights or defenses against an assignee, such as Norwest (Volling Declaration, ¶ 9). It relied upon various opinions, including a July 1998 opinion of the District Court for the District of Minnesota. *See LaBarre v. Credit Acceptance Corp.*, 11 F.Supp.2d 1071, 1076 ("*LaBarre I*"). Plaintiffs refused to dismiss the claim.

On April 18, 1999, the Court of Appeals for the Eighth Circuit affirmed the decision of the District Court, a holding which Norwest contends substantiates that there was no basis for any claim against it. *See LaBarre v. Credit Acceptance Corporation*, 175 F.3d 640, 644 (8th Cir.1999) ("*LaBarre II*").

Despite the Eighth Circuit's decision in *LaBarre II*, Plaintiffs served a Motion for Class Certification on the "Holder Liability" claim and a Motion for Partial Summary Judgment [Docket No. 54] on May 14, 1999. Between May 14, 1999 and June 14, 1999, the day that Defendants' responsive briefs to the Motion for Class Certification and Partial Summary Judgment were due, Plaintiffs' counsel made no effort to communicate with Defendant Norwest regarding settlement or dismissal.

On June 14, 1999, counsel for Defendant Norwest received a fax from Plaintiffs' counsel stating that Plaintiffs would dismiss the suit. On June 16, 1999, counsel for Plaintiffs wrote to the District Court to request that the Complaint against Norwest be dismissed. The letter states:

"After a careful review of the recent decision by the Eighth Circuit Court of Appeals in *LaBarre v. Credit Acceptance Corp.*, [175] F.3d [640], 1999 WL 247332 at ¶ 3 (8th Cir.4/28/99), the plaintiffs have concluded that it is in their best interests and the best interests of judicial economy to dismiss their claims against Norwest Bank accordingly.

Enclosed for the Court's approval please find a proposed Order approving plaintiffs' dismissal of Norwest Bank as a Defendant in the above matter. Should it meet with your approval, plaintiffs request that you execute the Order and Norwest herewith be dismissed as a defendant in this action."

The proposed Order was signed on June 22, 1999 [Docket No. 57]. On July 29, 1999 the District Court ordered that Judgment be entered dismissing all claims of Plaintiffs against all Defendants. [Docket No. 61.] Judgment was entered on July 30, 1999. [Docket No. 62.]

## C. Defendants' Motions

On October 12, 1999, Defendants filed the current motions, each seeking an award of attorneys' fees and costs pursuant to 28 U.S.C. § 1927, Rule 11 of the Federal Rules of Civil Procedure, and the Court's inherent authority to sanction (Defendant Norwest also seeks sanctions pursuant to the provisions of Minn.Stat. § 325D.45). Defendants seek sanctions based upon Plaintiffs' allegedly improper conduct throughout the course of the proceedings. This matter has been comprehensively addressed by the parties in numerous Memoranda and Affidavits, a listing of which we provide in the Appendix to this Report and Recommendation. We conclude that the District Court is without power to order sanctions pursuant to the provisions of Rule 11 of the Federal Rules of Civil Procedure. We also recommend that it decline to order sanctions upon any other basis, without prejudice to the right of Defendants to seek recovery in an independent action.

## II. DISCUSSION

### A. Sanctions Under Rule 11 of the Federal Rules of Civil Procedure

#### 1. *Jurisdiction*

■ The imposition of Rule 11 sanctions "is a procedural matter that is not restricted by Article III standing requirements." *Citizens For A Better Environment v. The Steel Company,* 1999 WL 412439 (N.D.Ill. 1999) (Court's authority to award attorney's fees or Rule 11 sanctions not based on Article III jurisdiction, but on congressional authority under Article I, § 8, cl. 9 to establish laws regulating the conduct of the court); *see also Willy v. Coastal Corporation,* 503 U.S. 131, 136–37, 112 S.Ct. 1076, 1080, 117 L.Ed.2d 280 (1992). In *Cooter & Gell v. Hartmarx Corporation,* 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990), the Supreme Court held that a district court retains jurisdiction over a Rule 11 motion even after a voluntary dismissal under Rule 41(a)(1)(i) occurs.

The Court reasoned that a Rule 11 motion is not a judgment on the merits, but a collateral issue, and thus can be made after the termination of the principal suit. The Court noted that it was "well established that a federal court may consider collateral issues after an action is no longer pending," such as "motions for costs or attorney's fees or an adjudication of contempt, as they are independent proceedings supplemental to the original proceeding and not a request for a modification of the original decree." 496 U.S. at 395–96, 110 S.Ct. at 2455–56 (internal citations omitted). "Like the imposition of costs, attorney's fees, and contempt sanctions, the imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and if so, what sanction would be appropriate." 496 U.S. at 396, 110 S.Ct. at 2456.

We find this Court to have jurisdiction over the Rule 11 sanctions issue. *See Dunn v. Gull,* 990 F.2d 348, 350 (7th Cir. 1993) (Although the Court in *Cooter & Gell* only considered voluntary dismissal under Rule 41(a)(1), "a logical interpretation of *Cooter* would extend the Supreme Court's reasoning to a Rule 41(a)(2) dismissal").

Plaintiffs concede that *Cooter & Gell* did provide the courts continuing jurisdiction over Rule 11 issues, but contend that the 1993 Amendments to the Rule essentially overruled it by removing the jurisdiction to hear the motion unless the proper procedure is followed. Defendants disagree, arguing that the 1993 Amendments altered only the timing requirements of Rule 11, not the exercise of jurisdiction.

Whether the court has jurisdiction to hear a case and whether a party has followed proper procedure are two different issues. A finding that a party has not followed the proper procedure can prevent it from pursuing a particular avenue, such as Rule 11 sanctions. However, this does not divest the court's ability to hear the motions. The effect of this situation is

illustrated in the cases cited to us by Plaintiffs in which the court exercised jurisdiction, and then determined that sanctions could not be imposed under Rule 11 because the proper procedure was not followed. *See Ridder v. City of Springfield,* 109 F.3d 288 (6th Cir.), *cert. denied,* 522 U.S. 1046, 118 S.Ct. 687, 139 L.Ed.2d 634 (1998); *Hockley v. Shan Enterprises Limited Partnership,* 19 F.Supp.2d 235 (D.N.J. 1998); *Photocircuits Corp. v. Marathon Agents, Inc.,* 162 F.R.D. 449 (E.D.N.Y. 1995).

### 2. *Procedures Under Rule 11*

Rule 11(c) governs the sanctions process under Rule 11. It reads in relevant part:

(1) How Initiated

(A) By Motion. A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.

Rule 11 was amended in 1993. The purpose of the amendment was to "reduce the number of motions for sanctions presented to the court" by allowing a mechanism for the parties to self-police the proceedings. Fed.R.Civ.P. 11 Advisory Committee Notes (1993 Amendments); *see also Ridder v. City of Springfield,* 109 F.3d 288, 296 (6th Cir.1997), *cert. denied,* 522 U.S. 1046, 118 S.Ct. 687, 139 L.Ed.2d 634 (1998). This is accomplished by establishing a process by which a party must be given a formal opportunity to withdraw from improper conduct. Under the Rule, "a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refused to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation." Fed.R.Civ.P. 11 Advisory Committee Notes (1993 Amendments). This period of time has been described as a "safe harbor."

Rule 11(c) requires a moving party to formally serve the motion for sanctions upon the offending party. The offending party must be provided formal notice of the moving party's intent to seek sanctions, and this notice must sufficiently detail the conduct alleged to violate the Rule. The requirement of a Notice of the alleged improper conduct enables the offending party to know what conduct is the source of the dispute, and to know precisely what action is required to cure the offense. (For example, the Motion in this case would have specified that the offending conduct consists of the persistence in asserting claims based upon the refund credit claim and holder issues, and asserting class claims based on such allegations. The corrective conduct would be to dismiss the allegations and withdraw the Motion for a Class Action as to those allegations.)

Substantial sanctions are authorized under Rule 11. Providing 21 days within which to take the necessary corrective action recognizes that the accomplishment of the required result cannot be completed without thorough file review, and client consultation. Adequate time is thus required for the party to correct its improper conduct, before such serious sanctions would be warranted. *See Hockley,* 19 F.Supp.2d at 240 ("The express purpose of [the 1993 Amendments] to the rule was to prevent abuses of Rule 11 sanctions by providing parties a 'safe harbor' within which they will not be subject to sanctions unless they refuse to withdraw offending papers filed with the court"). Put another way, a party which does not willingly undertake corrective conduct within 21 days may not be heard to say that it was incapable of acting within the time required.

### 3. *Defendants Failed to Follow Rule 11 Procedure*

 In order to seek the imposition of sanctions on an opponent under Rule 11,

the movant must follow the procedure specified in the Rule. Defendants' Motions under Rule 11 must be denied on procedural grounds in this case. Plaintiffs were not served with a formal Motion, but with Notices of Intent to Claim an Award of Attorney's Fees and Costs. Even if notices, and not a Motion, were sufficient, these documents were not served until after dismissal had already occurred. *See* Docket Nos. 69, 72 and 73.

Plaintiffs were not offered the opportunity to correct their conduct in order to avoid sanctions. The language and intent of the Rule preclude a party from bringing a motion for sanctions under Rule 11 after the offending party has voluntarily dismissed its suit. *See Hockley,* 19 F.Supp.2d at 240. The drafters of the Federal Rules of Civil Procedure suggest:

> "[O]rdinarily the motion should be served promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely.... Given the 'safe harbor' provisions ... a party cannot delay serving its Rule 11 motion until conclusion of the case (or judicial rejection of the offending contention)."

Fed.R.Civ.P. 11, Advisory Committee Notes (1993 Amendments); *see also Harding,* 48 F.Supp.2d at 771. A party is not to file a motion with the court unless the offending party fails to withdraw the opposed pleading or contention within 21 days of service of the motion. If a party has already dismissed the suit before the moving party serves the motion, there is no pleading or contention left to be withdrawn.

█ Defendants argue that the warning letters sent to Plaintiffs' counsel between February and April of 1999 satisfied the spirit of the 1993 Amendments by providing notice and giving Plaintiffs the opportunity to correct their allegedly violative conduct. In support of their argument, Defendants cite to *Barker v. Bank One, Lexington, N.A.,* 156 F.3d 1228, 1998 WL 466437 (6th Cir.1998) (unpublished op.). In *Barker,* the defendants wrote letters to

plaintiff warning him that the action filed against them by plaintiff's client was frivolous and they would seek sanctions. Plaintiff did not respond on behalf of his client. Several months later, the action was dismissed by the district court. About one month after final judgment had been entered, the defendants served plaintiff with a motion for Rule 11 sanctions, and then filed the motion with the court 22 days later.

The *Barker* court found that the letters written to the plaintiff, along with the fact that defendants served him more than 21 days before filing, met the purpose of the safe harbor rule. The court noted that the letters served as proper warning to the plaintiff that sanctions would be sought if the claims were not dismissed. By waiting 21 days after service to plaintiff before filing, despite the fact that judgment had been entered, the court deemed defendants to have satisfied the safe harbor.

In *Barker,* plaintiff did not voluntarily dismiss the suit as requested. Instead, he responded to defendants' motion to dismiss the suit against his client presenting arguments he knew to be frivolous. Thus, he did not heed the warning provided by defendants' letter, but continued his pursuit of the claim in a frivolous manner. Further, the court relied on alternative grounds for the award of sanctions.

To the extent that the *Barker* court held that the warning letters will satisfy the requirement of service of the motion to the offending party prior to the entry of judgment as well as the safe harbor, it is inconsistent with the holding in the same circuit in *Ridder v. City of Springfield,* 109 F.3d 288, 296 (6th Cir.1997) ("The plain language of Rule 11 specifies that unless a movant has complied with the twenty-one day safe harbor service, the motion for sanctions shall not be filed with or presented to the court") (internal citations omitted). *See also Harding University v. Consulting Services Group, L.P.,* 48 F.Supp.2d 765, 770 (N.D.Ill.1999); *Photocircuits*

*Corp. v. Marathon Agents, Inc.,* 162 F.R.D. 449, 452 (E.D.N.Y.1995). "To stress the seriousness of a motion for sanctions and to define precisely the conduct claimed to violate the rule, the revision provides that the 'safe harbor' period begins to run only upon service of the motion." Fed.R.Civ.P. 11, Advisory Committee Notes. "It would therefore wrench both the language and purpose of the amendment to the Rule to permit an informal warning to substitute for service of a motion." *Barber v. Miller,* 146 F.3d 707, 710 (9th Cir.1998) (Informal letter warning of intent to file motion for sanctions does not start the safe harbor period under Rule 11).

The Motions for Sanctions under Rule 11 are procedurally deficient. Relief should not be granted based upon that Rule.

## B. Other Remedies

Defendants argue that the conduct of counsel for the Plaintiffs constitutes intentional or reckless disregard of the obligations an attorney owes to the court, and "unreasonably and vexatiously multiplied the proceedings." In addition to seeking sanctions under Rule 11, Defendants argue that the facts of this case provide for the imposition of sanctions, pursuant to 28 U.S.C. § 1927 and the Court's inherent authority. Defendant Norwest also seeks sanctions under Minn.Stat. § 325D.45.

28 U.S.C. § 1927 provides in relevant part:

"Any attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

"Unreasonably and vexatiously multiplies proceedings" has been interpreted by the Eighth Circuit to require a finding of both objectively unreasonable behavior and bad faith. *See N.A.A.C.P. v. Atkins,*

908 F.2d 336, 340 (8th Cir.1990); *see also Joseph V. Edeskuty & Associates v. Jacksonville Kraft Paper Co., Inc.,* 702 F.Supp. 741, 746 (D.Minn.1988) (denied sanctions under 28 U.S.C. § 1927 because the record did not reflect any bad faith on part of defendant's counsel). The Eighth Circuit has also found "intentional or reckless disregard of the attorney's duties to the court" to satisfy the bad faith portion of the standard. *Perkins v. Spivey,* 911 F.2d 22, 36 (8th Cir.1990), *cert. denied,* 499 U.S. 920, 111 S.Ct. 1309, 113 L.Ed.2d 243 (1991).

The existence of an inherent power in the federal courts is necessary so the courts can "manage their own affairs so as to achieve orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991). This power has included the ability "to dismiss actions, assess attorneys' fees, and to impose monetary or other sanctions appropriate for conduct which abuses the judicial process." *Harlan v. Lewis,* 982 F.2d 1255, 1259 (8th Cir.1993), *citing Chambers,* 501 U.S. at 44, 111 S.Ct. at 2133. The Eighth Circuit has held that there is not a bad faith requirement that extends to every disciplinary action the court makes, such as monetary sanctions. *See Harlan,* 982 F.2d at 1260. However, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers,* 501 U.S. at 44, 111 S.Ct. at 2132.

Minn.Stat. § 325D.45, subd. 2, of the Minnesota Deceptive Trade Practices Act, states in relevant part:

"Costs shall be allowed to the prevailing party unless the court otherwise directs. The court may award attorneys' fees to the prevailing party if 1) the party complaining of a deceptive trade practice has brought an action knowing it to be groundless, ..."

*See also Scott v. Mego International, Inc.,* 524 F.Supp. 74, 75 (D.Minn.1981) (Plaintiff must have known his action to be groundless for prevailing party to be awarded

attorneys' fees under Minn.Stat. § 325D.45).

Compliance with the procedures of Rule 11 is not required for an award of sanctions under 28 U.S.C. § 1927. Indeed, in the *Ridder* case the court concluded that it should award sanctions under this statute, even though sanctions were not available under Rule 11. "Unlike Rule 11 sanctions, a motion for excess costs and attorney fees under § 1927 is not predicated upon a 'safe harbor' period, nor is the motion untimely if made after the final judgment in a case." *Ridder*, 109 F.3d at 297. In *Willy v. Coastal Corp.*, 503 U.S. 131, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992), the Supreme Court stated that "Article I, § 8, cl. 9, authorizes Congress to establish the lower federal courts. From almost the founding days of this country, it has been firmly established that Congress, acting pursuant to its authority to make all laws 'necessary and proper' to their establishment, also may enact laws regulating the conduct of those courts and the means by which their judgments are enforced. Indeed, in acknowledging the many circumstances in which sanctions can be imposed, several of which have a statutory basis, petitioner effectively concedes both Congress' general power to regulate the courts and its specific power to authorize the imposition of sanctions." *Willy*, 503 U.S. at 136, 112 S.Ct. at 1080.

Although *Cooter & Gell* related specifically to Rule 11 sanctions, that Court's analysis still supports a finding of jurisdiction under Section 1927: "Like the imposition of costs, attorney's fees, and contempt sanctions, the imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate." *Cooter & Gell*, 496 U.S. at 396, 110 S.Ct. at 2456.

In considering this issue, we have examined with care the voluminous pleadings cited in the Appendix. The parties have briefed the issue thoroughly, and provided us with sharply contrasting views of the timing of the relevant facts, the state of knowledge of the parties and the nuances of the law. The pleadings make it clear that the claims of Defendants are not insubstantial. However, we have concluded that the entitlement of Defendants to a recovery from Plaintiffs and their counsel is not best determined using the procedures applicable for the consideration of a motion, given the facts of this case and the procedural posture in which it is presented.

The concern with process has not been directly addressed in the context of a motion under these particular facts, but it has drawn the attention of courts in other situations. For example, in *Mackler Productions, Inc. v. Cohen*, 146 F.3d 126, 129 (2nd Cir.1998), the Court considered punitive sanctions of $10,000, and compensatory sanctions of $45,000. The Court expressed concern about considering such substantial sanctions (particularly punitive sanctions) in the context of a motion. It stated:

> "A troublesome aspect of a trial court's power to impose sanctions, either as a result of a finding of contempt, pursuant to the court's inherent power, or under a variety of rules such as Fed.R.Civ.P. 11 and 37, is that the trail court may act as accuser, fact finder and sentencing judge, not subject to restrictions of any procedural code and at times not limited by any rule of law governing the severity of sanctions that may be imposed. See *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994) .... The absence of limitations and procedures can lead to unfairness and abuse."

146 F.3d at 128. The procedural concerns raised by these Courts have application here. In this case, of course, the trial court is not the "accuser," but it is expected to act as the fact finder in making the subtle determinations of motive, and the damages resulting from conduct, on the

basis of a record which, although extensive, does not contain testimony of any of the participants except by way of Affidavit. In addition, the underlying suit has been resolved, so summary adjudication of the matter is not necessary.

 These Motions seek an award of attorneys' fees and costs totaling more than $100,000.00.[4] Although we have found no cases which directly hold that 28 U.S.C. § 1927 affords a substantive right which can be preserved by litigation, we conclude that this is a superior process for the resolution of the claim under that statute in this case. Defendants base their claim for attorneys' fees on facts which appear to share the elements of the cause of action for abuse of process. The elements for an abuse of process claim are: 1) the existence of an ulterior purpose and 2) the act of using the process to accomplish a result not within the scope of the proceedings in which it was issued, whether or not the result might otherwise be lawfully obtained. *See Hoppe v. Klapperich*, 224 Minn. 224, 231, 28 N.W.2d 780, 786 (1947); *Kellar v. VonHoltum*, 568 N.W.2d 186, 192 (Minn.Ct.App.1997).[5]

Resolution of the claims now before the Court necessarily involves a determination of the facts, and appropriate inferences from the facts, including subjective issues such as "bad faith." *See N.A.A.C.P. v. Atkins*, 908 F.2d 336, 340 (8th Cir.1990) ("[T]he language of § 1927 appears to require both a finding of objectively unreasonable behavior and a finding of bad faith"). If liability is determined, the court will be called upon to calculate the attorneys' fees which are attributable to the conduct which is found to be improper. Here, not all of the attorneys' fees incurred by Defendants were directly attributable to the alleged improper conduct.

Rather than attempt to resolve all of these contested issues by reviewing Affidavits in a Motion proceeding, we recommend that the District Court deny the Motions, but without prejudice to the right of the parties to seek relief in an independent cause of action. A separate cause of action would provide all of the parties the opportunity to take part in discovery and to fully develop the factual record.

### RECOMMENDATION

For the reasons set forth above, it is recommended that Defendants' Motions for Attorneys' Fees and Costs [Docket Nos. 83, 87 and 90] be denied without prejudice.

April 25, 2000.

### APPENDIX

| | Docket No. |
|---|---|
| 1. **Defendants John Doe, Marcia VanValkenberg, David A. Lake and Main Motor Notice of Intent to Claim an Award of Attorneys' Fees and Costs** | 72 |
| 2. **John Doe, Marcia VanValkenberg, David A. Lake and Main Motor's Memorandum in Support of Motion for Attorney's Fees and Costs** | 87 |
| a. Affidavit of Gregory Johnson in Support of Motion for Attorneys' Fees and Costs | 88 |
| b. Affidavit of Klay C. Ahrens in Support of Motion for Attorneys' Fees and Costs | 89 |

4. Defendant Main Motors states that it incurred in excess of $60,000 in legal fees from commencement of suit until June 28, 1999 (Ahrens Aff., ¶ 3). Defendant Norwest states that it incurred expenses of more than $46,000 in attorneys' fees and costs (Volling Declaration, ¶ 10). Defendant Life Investors has not provided a statement of fees and costs.

5. The elements of an action for malicious prosecution are: 1) the underlying suit must be brought without probable cause; 2) the action must have been instituted with malicious intent; and 3) the action must have terminated in claimant's favor. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir.1999).

| | | Docket No. |
|---|---|---|
| 3. | Defendant Life Investors' Notice of Intent to Claim an Award of Attorneys' Fees and Costs | 73 |
| 4. | Life Investors' Motion for Attorneys' Fees and Costs | 83 |
| | a. Life Investors' Memorandum In Support of Motion for Attorneys' Fees and Costs | 84 |
| | b. Affidavit of James R. Crassweller | 85 |
| | c. Affidavit of Steven G. Mahon | 86 |
| 5. | Defendant Norwest Bank Notice of Intent to Claim an Award of Attorneys' Fees and Costs | 69 |
| 6. | Norwest Bank's Motion for Attorneys' Fees and Costs | 90 |
| | a. Norwest Bank's Memorandum In Support of Motion for Attorneys' Fees and Costs | 91 |
| | b. Declaration of James L. Volling in Support of Defendant Norwest Bank's Motion for Attorneys' Fees and Costs | 92 |
| 7. | Plaintiffs' Memorandum in Opposition to Defendants' Motion for Attorneys' Fees and Costs | 93 |
| | a. Affidavit of William H. Crowder in Opposition to Defendants' Motion for Attorneys' Fees and Costs | 94 |
| | b. Affidavit of Peter F. Barry in Opposition to Defendant Norwest Bank's Motion for Attorneys' Fees and Costs | 95 |
| | c. Affidavit of Richard Fuller in Opposition to Defendant Norwest Bank's Motion for Attorneys' Fees and Costs | 96 |
| | d. Letter to Court from Susan F. Bedor with Exhibit 14 to Affidavit of Richard Fuller | 97 |
| 8. | Defendant Norwest Bank's Reply Memorandum in Support of Motion for Attorneys' Fees and Costs | 98 |
| 9. | Reply Memorandum by Defendants John Doe, Marcia VanValkenberg, David A. Lake and Main Motor's Motion in Support of Motion for Attorneys' Fees and Costs | 99 |
| | a. Supplemental Affidavit of Gregory Johnson in Support of Motion for Attorneys' Fees and Costs | 100 |
| 10. | Reply Memorandum of Defendant Life Investors in Support of Motion for Attorneys' Fees and Costs | 102 |
| 11. | Plaintiffs' Supplemental Affidavits | |
| | a. Second Affidavit of Peter F. Barry in Opposition to Defendant Norwest Bank's Motion for Attorneys' Fees and Costs | 102 |
| | b. Affidavit of Susan F. Bedor in Opposition to Defendant Norwest Bank's Motion for Attorneys' Fees and Costs | 103 |
| | c. Second Affidavit of William H. Crowder in Opposition to Defendants' Motion for Attorneys' Fees and Costs | 104 |
| | d. Affidavit of Gregory L. Paulson in Opposition to Defendants' Motion for Attorneys' Fees and Costs | 105 |
| | e. Affidavit of Richard Fuller (Second) in Opposition to Defendant Norwest Bank's Motion for Attorneys' Fees and Costs | 106 |
| 12. | Joint Supplemental Memorandum of Defendants on Jurisdiction in Support of Motion for Attorneys' Fees and Costs | 108 |
| | a. Supplemental Affidavit of James L. Volling | 109 |
| | b. Second Supplemental Affidavit of Gregory Johnson | 110 |
| 13. | Supplemental Memorandum by Plaintiffs on Jurisdiction in Opposition to Motion for Attorneys' Fees and Costs | 111 |
| 14. | Joint Supplemental Reply of Defendants in Support of Motion for Attorneys' Fees and Costs | 112 |