Thomas A. MORTICE, Plaintiff,

v.

PROVIDIAN FINANCIAL CORPORA-
TION, d/b/a Providian National Bank,
Experian Information Solutions Inc.,
and Trans Union LLC, Defendants.

No. CIV.02–2936(PAM/RLE).

United States District Court,
D. Minnesota.

Sept. 23, 2003.

---

Thomas J. Lyons, Lyons & Assoc, Little Canada, MN, for Plaintiff.

Todd A. Noteboom, Monica L. Davies, Leonard Street and Deinard, William Allen Gengler, Gregory J. Myers, Lockridge Grindal Nauen, Michael T. Browne, Meagher & Geer, Minneapolis, MN; Michelle M. Blum, Gregory E. Woodard, Jones Day, Irvine, CA; John A. Cotter, Larkin Hoffman Daly & Lindgren, Bloomington, MN; John G. Cento, Katz & Korin, Indianapolis, IN, for Defendants.

## MEMORANDUM AND ORDER

MAGNUSON, District Judge.

This matter is before the Court on Defendant Providian Financial Corporation's Motion for Sanctions under Federal Rule of Civil Procedure 11.

### BACKGROUND

Plaintiff Thomas Mortice brought this lawsuit under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.* In his Complaint, he alleged that Defendant Providian Financial Corporation ("Providian") violated the FCRA by failing to credit his credit card balance with a $13,000 payment allegedly made in June 2001. Attached to the Complaint as Exhibit 2 was a copy of the $13,000 check that Mortice allegedly sent Providian and that Providian allegedly cashed.

The $13,000 check, bearing check number 5000, was actually a check that Mortice made out to himself and cashed in June 2001. The copy of the check attached to the Motion bears some unique routing numbers from Providian's bank; however, these routing numbers are also found on Mortice's check number 5003, a check in the amount of $26.15 that was undisputedly sent to Providian and cashed by Providian. The same routing numbers never appear on different checks. The only explanation for this discrepancy is that someone cut and pasted the routing information and the "pay to the order of" information from check number 5003 onto check number 5000 to make it look as if Mortice had sent the $13,000 check to Providian and that Providian had cashed the check.

To make matters more complicated, Providian in fact credited Mortice's account with a $13,000 payment in June 2001. According to Providian, this payment was in the form of an electronic withdrawal from Mortice's checking account, not in the form of a paper check. Because Mortice gave Providian an inaccurate account number and Mortice's bank dishonored Providian's attempted withdrawal, Providian eventually removed the $13,000 credit from Mortice's credit card account statement.

Mortice filed the instant lawsuit in August 2002. Providian contends that it suspected almost immediately that the check attached to the Complaint had been altered, but did not mention this fact in its Answer to the Complaint. After looking into the matter and examining Mortice's bank statements, Providian concluded that someone had altered the check in the manner described above. On December

19, 2002, Providian's counsel, Todd Noteboom, wrote to Mortice's attorneys. (Noteboom Aff. Ex. A.) This letter explained that the check attached to the Complaint had been altered or manufactured and asked Mortice to dismiss the lawsuit with prejudice. Providian attached to the letter copies of the $13,000 check that Mortice wrote to himself, the $26.15 check that Mortice wrote to Providian, and Mortice's bank statements. The letter also stated that, if Mortice failed to dismiss the lawsuit, Providian intended to move for sanctions under Rule 11. (*Id.*) Mortice's attorneys responded to this letter the next day, contending that Mortice was "concerned and bewildered" by Providian's allegations. (Noteboom Aff. Ex. B at 1.) The letter noted that Providian had credited Mortice's account for $13,000, but then claimed that Mortice's bank returned the check unpaid. (*Id.*) Mortice's attorneys stated that Providian's allegations had no merit and that Providian's threat to move for sanctions was premature. (*Id.*) On December 26, 2002, Providian again wrote Mortice's attorneys, explaining again that the check attached to the Complaint could not have been sent to Providian. (*Id.* Ex. C.) For the first time, Providian informed Mortice's attorneys that the $13,000 payment that was credited to Mortice's account was the result of an electronic check, not a paper check. (*Id.*) Providian again asked Mortice to dismiss his lawsuit and threatened to seek "appropriate relief" from the court if Mortice failed to do so. (*Id.* at 2.)

In January 2003, the parties were scheduled to engage in some discovery. Mortice's counsel informed Providian's counsel that Mortice's bank had allegedly found the check at issue. However, the documents produced by Mortice's bank showed that only one $13,000 check had been written on Mortice's account and that the $13,000 check was written to and cashed by Mortice. (*Id.* Ex F (Feb. 18, 2003,

letter from Mr. Noteboom to Mr. Lyons, Jr.).) Mortice did not dismiss the lawsuit and Providian moved for summary judgment and for costs and attorneys' fees. Mortice ultimately did not contest the Motion for Summary Judgment but did oppose the Motion for costs and fees.

After the Court granted Providian's uncontested Motion for Summary Judgment and gave Providian its attorneys' fees, Providian brought this Motion for Sanctions under Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927. Providian contends that Mortice and his counsel should have dismissed the Complaint in December 2002, after being presented with evidence that the check attached to the Complaint had been altered or manufactured. The failure to dismiss the Complaint, according to Providian, violates the letter and spirit of Rule 11.

## DISCUSSION

Mortice's counsel, Thomas Lyons, Sr., and Thomas Lyons, Jr. (collectively, "Counsel") raise two arguments against the imposition of sanctions in this case. First, Counsel contends that Providian did not comply with the safe harbor provisions of Rule 11 and thus is not entitled to sanctions. Second, Counsel argues that Providian did not disclose to Counsel all of the evidence that it had to establish the fraudulent nature of the check attached to the Complaint, making Counsel's refusal to dismiss the Complaint reasonable. In particular, the parties dispute the import of a printout of a computer screen showing that the $13,000 credit to Mortice's account was the result of an electronic check or telephone transfer of funds, and was not the result of a paper check.

### A. Safe Harbor

 A motion for sanctions under Rule 11 "shall not be filed with or presented to the court unless, within 21 days after service of the motion ..., the challenged

[pleading] is not withdrawn or appropriately corrected." Fed.R.Civ.P. 11(c)(1)(A). Courts are divided as to whether a letter warning that a motion for sanctions is imminent can trigger the 21–day safe harbor provision, or whether only service of the actual motion for sanctions triggers the safe harbor. In this case, the Motion was served after this Court granted Providian's Motion for Summary Judgment and dismissed the Complaint, and thus there was no opportunity for Counsel to take corrective action and dismiss the Complaint after service of the Motion.[1] There is no dispute, however, that Counsel withdrew from representing Mortice within 21 days after the Motion was served on them. Providian contends that the letters it sent to Counsel in December 2002 triggered the running of the safe harbor provision because those letters notified Counsel that there was no factual basis for Mortice's claims and also warned that Providian would seek sanctions pursuant to Rule 11.

■ The 21–day safe harbor provision was added to Rule 11 in 1993. The 1993 amendments were intended to "place[ ] greater constraints on the imposition of sanctions." Fed.R.Civ.P. 11 advisory committee notes. The Advisory Committee Notes suggest that only formal motions for sanctions under Rule 11 will trigger the safe harbor provisions. "The rule provides that requests for sanctions must be made as a separate motion." *Id.* Other courts in this District have addressed this specific issue and have found that letters such as those Providian sent to Counsel do not comply with the notice requirements of Rule 11. *See TRI, Inc. v. Boise Cascade Office Prods, Inc.,* No. 00–CV–1464 (RHK/AJB), 2002 WL 31108190 (D.Minn.

Sept. 20, 2002) (Kyle, J.); *VanDanacker v. Main Motors Sales Co.,* 109 F.Supp.2d 1045, 1055 (D.Minn.2000) (Doty, J., adopting Report & Recommendation of Mason, M.J.). This Court agrees that the notice requirements of Rule 11 are intended to be strictly enforced. Thus, Providian's letters to Counsel did not constitute notice for the purposes of bringing a motion for Rule 11 sanctions. The portion of Providian's Motion seeking sanctions under Rule 11 is thus procedurally deficient and must be denied.

**B. Section 1927**

■ Providian argues that, even if its letters to Counsel did not comply with Rule 11's safe harbor provision, the Court may still impose sanctions under 28 U.S.C. § 1927. Section 1927 provides for the imposition of attorneys' fees and costs against an attorney who "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. The section contains no safe harbor provision. To impose sanctions pursuant to § 1927, the Court must find that Counsel exhibited both "objectively unreasonable behavior" and bad faith. *NAACP v. Atkins,* 908 F.2d 336, 340 (8th Cir.1990). The party seeking sanctions may establish counsel's bad faith by showing "intentional or reckless disregard of the attorney's duties to the court." *Perkins v. Spivey,* 911 F.2d 22, 36 (8th Cir.1990); *see also Lee v. First Lenders Ins. Servs., Inc.,* 236 F.3d 443, 445 (8th Cir.2001) (affirming § 1927 sanctions against Thomas J. Lyons & Associates).

Counsel contends that the imposition of sanctions under § 1927 is inappropriate because Providian did not disclose to Counsel evidence in Providian's possession

1. Despite the fact that the judgment has been entered in this case, the Court retains jurisdiction to impose sanctions. *See VanDanacker v. Main Motor Sales Co.,* 109 F.Supp.2d 1045, 1052 (D.Minn.2000) (Doty, J., adopting Report & Recommendation of Mason, M.J.) (court retains jurisdiction to impose Rule 11 sanctions after the matter has been dismissed).

regarding the attempted telephone transfer until Providian served its Motion for Summary Judgment. Counsel contends that, in light of the fact that they did not have this evidence, their refusal to dismiss the Complaint in December 2002 was reasonable. Providian responds that the evidence Counsel had, including the altered check and Mortice's own bank statements, was sufficient to put Counsel on notice that the check appended to the Complaint was a forgery and that Mortice had not in fact made a $13,000 payment to Providian. According to Providian, the evidence Counsel had should have alerted them to the frivolousness of the lawsuit and it was unreasonable for Counsel to continue to press the lawsuit after being made aware of the discrepancy between the check and Mortice's bank statements.

 The standard for imposing sanctions under § 1927 is more stringent than the standard under Rule 11. In particular, while Rule 11 requires only a showing of objective unreasonableness, § 1927 requires that the party seeking sanctions prove that counsel acted in subjective bad faith. *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 96 (2d Cir.1997).

This case presents a very close question as to whether Counsel acted in bad faith. The Court finds Counsel's conduct reprehensible. However, in light of Providian's failure to disclose evidence regarding the e-check, the Court cannot say that Counsel acted in subjective bad faith. Thus, the Court declines to impose sanctions on Counsel. Providian's Motion under § 1927 is denied.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion for Sanctions (Clerk Doc. No. 45) is **DENIED**.